**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John Antonio EVANS,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William McINTYRE,**
**Defendant–Appellant.**

**Nos. 89–5487, 89–5488.**

United States Court of Appeals,
Fourth Circuit.

Argued July 19, 1990.

Decided Oct. 26, 1990.

---

Nina Jean Ginsberg (argued), Dimuro, Ginsberg & Lieberman, P.C., Alexandria, Va., for appellant Evans.

David Harrison Hopkins, Fairfax, Va., for appellant McIntyre.

Bernard James Apperson, III, Asst. U.S. Atty., Henry E. Hudson, U.S. Atty. (on brief), Alexandria, Va., for appellee.

Before CHAPMAN and WILKINSON, Circuit Judges, and HOUCK, United States District Judge for the District of South Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

On July 31, 1989, following a jury trial, John Antonio Evans and William McIntyre were convicted of distributing, within 100 feet of a video arcade facility, 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and aiding and abetting such distribution in violation of 18 U.S.C. § 2. Appellants claim error by the district court (1) in denying Evans' motion to suppress a statement given to police officers shortly after his arrest, (2) in failing to inquire of prospective jurors on *voir dire* as to possible prejudice in favor of a police officer's testimony, (3) in allowing the government to improperly vouch for the credibility and truthfulness of its primary witness, and (4) in failing to give a limiting instruction after the admission of evidence of other crimes by the appellants. We find no error as to exceptions 1, 3, and 4. We reverse and remand for a new trial because, under the totality of the circumstances of this case, the court's refusal to inquire on *voir dire* as to possible prejudice in favor of police testimony was an abuse of discretion. The limited *voir dire* failed to inquire as to an element essential to the fairness of the trial.

I

The facts as presented at trial by DEA Agent Robert Valentine present a fairly routine purchase of crack cocaine in a parking lot near an Arlington County video arcade facility. On February 7, 1989, Agent Valentine, acting under cover, was introduced to appellant McIntyre by an individual known as Andre. The three met in a parking lot of the Virginia arcade. Valentine and McIntyre were sitting in the front seat of Valentine's automobile and Andre was in the rear seat. Valentine and McIntyre discussed the proposed sale of cocaine and Valentine asked McIntyre if he had the money with him, and stated that, once Valentine produced the money, McIntyre would call "his boy" to come over and deliver the crack. Valentine then counted out $2,400 in currency, and shortly thereafter appellant Evans entered the automobile and placed the bag of crack on the front seat. Evans advised Valentine to shut the door so the crack could not be seen. After being assured of the weight of the crack by McIntyre, Valentine gave him the $2,400. The parties then left the automobile and no arrests were made at that time.

Andre was not charged in the indictment and was not present at the trial. Both McIntyre and Evans testified that they were present with Andre and Valentine at the time of the drug deal, but they denied any involvement therein and claimed that the transaction was between Andre and Valentine. On cross-examination both defendants admitted that they were wearing electronic beeper pagers at the time of the transaction, and their explanations as to why they needed this equipment did not help their credibility. Both were convicted and appeal. Appellants claim that a statement made by Evans to Agents Valentine and Grubbs shortly after his arrest should have been suppressed because it was made after he had expressed his desire to remain silent and his desire for the services of an attorney.

Two weeks prior to trial, a suppression hearing was conducted and Agent Grubbs and appellant Evans testified. The facts as presented by the government reflected that, in May 1989, McIntyre and Evans were indicted by the grand jury of the Eastern District of Virginia on the present charge. On June 9, 1989, DEA Agents Grubbs and Valentine arrested Evans on a warrant issued pursuant to the indictment charging him with distributing 50 grams or more of crack within 100 feet of a video arcade facility. At the time of this arrest, Grubbs read Evans his rights as set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The exact language was read from a printed

card carried by the agent and designated as DEA form 13A. It stated:

Before we ask you any questions, you must understand you have the right to remain silent; anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. Do you understand? Are you willing to answer some questions?

Evans stated that he understood the rights that had been read to him, that he did not wish to make a statement at that time, and that he wanted to consult with an attorney before making any statement. Evans was then placed in the rear of the agent's automobile. Agents Valentine and Grubbs were in the front seat, and they proceeded to the Washington District office to process Evans. During this trip, Grubbs explained to Evans what would happen next in connection with the arrest warrant. He advised that Evans would be taken to the Washington office to be processed, finger printed and photographed, and that he would then be taken before a magistrate. Grubbs explained that the magistrate would determine bail, and that any serious question of whether to detain an arrestee pending trial was also decided by the magistrate. If individuals wished to cooperate, Grubbs stated, such information was conveyed to the Assistant United States Attorney, who in turn would convey this information to the magistrate. Evans advised that he understood this, and no further conversation occurred during the trip. The trip to the Washington office took approximately 25 minutes, because it was necessary for the agents to stop and buy gas for the vehicle.

After arriving at the DEA facility, Evans was taken to the processing area, and while he was being fingerprinted he stated that he wished to cooperate and make a statement. This indication of his desire to cooperate came approximately 30 minutes after he had arrived at the DEA facility. Agent Grubbs advised that he wanted to read Evans his *Miranda* rights again before proceeding, and again DEA form 13A was read and Evans stated he understood his rights, that he had had them read to him on other occasions, and that he was willing to talk without an attorney present. Thereafter, Evans admitted that he had been present in January 1989 with Agent Valentine when there was a distribution of crack. He denied that he had handed the crack to Valentine but stated that he saw McIntyre count the money and that he (Evans) got his share of the money. He also stated that he mostly sold crack in street distribution amounts in Arlington County and that he had made money from this activity. He stated that he purchased crack in open air drug markets in Washington. There was also reference to a .38 caliber revolver that he once owned but he stated that he had given away.

At the suppression hearing Evans admitted that he had been read his *Miranda* rights both at the time of his arrest and again after he indicated he wanted to make a statement while being processed. Testifying at the hearing, Evans stated that he understood his rights and that they had been read to him on previous occasions; however, he stated that the second time the rights were read they went in one ear and out the other. Evans also stated that while being transported from the place of arrest to the DEA building, Agent Grubbs had advised him that he was looking at ten years to life imprisonment "and if I don't cooperate that my ass would burn in the penitentiary." He also stated that Grubbs told him he should start thinking about cooperation. He stated that the officers talked to him while he was being fingerprinted and asked him where he got his drugs and advised him that cooperation would be the only thing that would get his bond low enough for him to be released. He claimed that he made this statement because he was afraid and wanted to go home.

At the conclusion of the testimony, the court denied the motion to suppress and stated:

[T]he Court finds that when the defendant was arrested he was read his Miranda warnings, he said that he understood them at that time, but that he did not wish to make a statement and wanted to consult with an attorney. He was transported to D.C. where he was put in a holding cell.

On the way, the agent told him that he was subject to a penalty of a minimum of ten years imprisonment and that he would be taken before a Magistrate who would determine whether or not he would be released pending trial or detained pending trial and that cooperation might bear on that decision. The Court finds nothing impermissible in telling the defendant those facts or those considerations.

Once at the station, defendant was read his rights a second time. The Court is persuaded that he knew and understood what his rights were; that he was familiar with his Miranda rights and that the statements he made thereafter were a knowing, intelligent, and voluntary waiver of those rights. The Court finds that it is not at all persuaded by his testimony that the rights went in one ear and out the other, nor does the Court hold that it is required every time in an instance of this sort that there be a written waiver signed and there is no case that so holds, and the Court does not find that this circumstance or this context would require that.

The Court is persuaded, based in part on his own testimony and part on his demeanor, and the Court has no doubt that this is a worldlywise young man, however young he may be, and he is eighteen, that he understood what his Miranda rights were about. If he did waive the rights in the hope that it would gain him something, that's perfectly appropriate and that is what generally motivates anyone to waive their rights.

In any event, the Court finds that he knew what he was doing, he understood what he was doing, and did it voluntarily, which means that he waived his right to have counsel present and not to answer questions, and therefore, voluntarily gave the statements.

## II

Appellant Evans claims that the use of his post-arrest statement by the government violated his fifth and his sixth amendment rights. He had a fifth amendment right to have counsel present during the custodial interrogation, *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612–13, 16 L.Ed.2d 694 (1966), and under the sixth amendment he had the right, after indictment, to counsel at a custodial interrogation. *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).*

■ Once an accused has asked for counsel, he may thereafter waive his request for and his right to counsel, and he may submit to interrogation that produces a statement that may be used against him. *North Carolina v. Butler*, 441 U.S. 369, 372–76, 99 S.Ct. 1755, 1756–59, 60 L.Ed.2d 286 (1979).

■ Evans claims that the officers continued his interrogation during the ride from the place of his arrest to the Washington DEA facility, and that this interrogation was after he had made clear to them that he did not want to make a statement and wanted the services of an attorney. Appellant relies upon the decisions in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), which protect an accused, who has requested counsel, from further in-custody police interrogation, and indicate that once an accused has requested counsel, he must be left alone by police until he has had the opportunity to consult

---

* Although *Michigan v. Jackson* involved a statement after a post-arraignment request for counsel and not a post-indictment request, the difference is not material in view of our finding that appellant Evans initiated the discussion with the officers and waived his right to remain silent and his previous request for counsel.

with counsel. These cases turn on the question of whether the police or the accused "initiated" further conversation or questioning that led to the statement that the accused seeks to suppress.

In *Edwards v. Arizona,* the Supreme Court constructed a prophylactic rule as follows:

> [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.... [A]n accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

451 U.S. at 484–85, 101 S.Ct. at 1884–85.

The issue in the present case is whether Evans initiated the further conversation with the officers, or whether the officers initiated the further conversation. The district court did not make a specific finding of fact on the issue of who initiated the conversation after Evans and the agents had arrived at the DEA facility. This point was not specifically argued at the suppression hearing and the judge was not requested to make a finding of fact on this point. In *United States v. Vickers,* 387 F.2d 703, 706 (4th Cir.1967), *cert. denied,* 392 U.S. 912, 88 S.Ct. 2069, 20 L.Ed.2d 1369 (1968), we held that when a district court denies a motion to suppress without findings of fact, when no findings of fact have been requested, the court's action amounts to an adoption of the facts presented by the government. *See also United States v. Bethea,* 598 F.2d 331, 333–34 (4th Cir.1979):

> When, as in this case, a district court denies a motion to suppress evidence, without making or being requested to make findings of fact, the result will be upheld on appeal if any reasonable view of the evidence, looked at in the light

most favorable to the government, will sustain denial.

*See also United States v. Jennings,* 653 F.2d 107, 109 (4th Cir.1981).

In viewing the record in light of the above standard, there is clearly sufficient evidence to support the trial court's finding that Evans knew what he was doing, understood his rights, and voluntarily waived his right to not answer questions and his right to have an attorney present. Approximately 55 minutes had elapsed between the time that Grubbs informed Evans in the automobile of what would happen at processing and before the magistrate, and the time that Evans initiated further conversation and indicated that he wished to cooperate. The evidence presented by the agents clearly presents a situation in which a young man experienced in dealing with law enforcement officers, and who had been read his *Miranda* rights on several previous occasions, decided almost an hour after the last conversations with the arresting officers that he would be better off making a statement of his involvement in the drug transaction of February 7, 1989. He initiated the further conversation that led to his statement. He knew and understood his rights and made a voluntary and knowing waiver of his right to remain silent and his right to have counsel present.

III

■ Appellants claim error by the trial judge in failing to ask one of their proposed questions to a jury venire during *voir dire.* The trial judge asked only eight questions as follows:

1. I would ask if any member of this panel knows anything about the facts and the circumstances of this case?

2. Are any of you close personal friends or relatives of, have any kind of business relationship, including an attorney/client relationship, with either of these defendants or any of the lawyers in the case?

3. Is there any member of this jury panel that is employed or works with or in any law enforcement capacity?

4. Has any member of this jury panel received any kind of legal training?

5. Now obviously this case involves a drug charge. And I would ask, is there any member of this jury panel that holds any opinions or beliefs in regard to drugs, illegal drugs, that would prevent you from rendering a fair and impartial verdict in this case?

6. Have any members of this panel ever either personally or had a member of their immediate family who has been the victim of drug abuse?

7. Is there any member of this panel that has any particular difficulty or disability that would prevent you from sitting on this jury today?

8. Now considering all of the questions I have already asked you, is there any reason why any one of you could not sit on the jury and render a fair and impartial verdict based upon the evidence presented here in the courtroom and the instructions on the law as will be given you by the court?

Defense counsel had submitted a list of seventeen questions, and some of these were covered by the eight questions asked by the court. However, in light of the anticipated testimony, one very important question was not asked by the court. This was:

Is there anyone who would give special credence and weight to the word of a law enforcement officer simply because of the fact that he occupies that position?

This question should have been asked. It would have taken only a moment, and since the trial was to be a test of credibility between Agent Valentine and appellants Evans and McIntyre, the defendants were entitled to have this information. What more valuable information could the defendants in this case have sought than an expression by a prospective juror that special weight and credence should be given to the testimony of a law enforcement officer simply because of his position? Only Valentine would testify as to what happened in his automobile while he was with Evans and McIntyre near the Virginia video arcade on February 7, 1989. If a juror was prepared to find Valentine believable sim-

ply because of his position as a DEA agent, the defendants did not receive a fair trial.

The right of peremptory challenge has long been recognized as one of the most important rights secured to the accused. In *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965), the Court stated:

The function of the challenge is not only to eliminate extremes of partiality on both sides, but to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them and not otherwise.

If the proposed question had been asked and affirmatively answered by a venireman, the trial judge would have been required to excuse this person for cause, or by instructions and additional questions convince the person that there is no special credence due the testimony of a policeman. While it might be argued that no prospective juror would ever answer the question in the affirmative and thereby admit that the testimony of a police officer was entitled to added weight, this is not an assumption that we may indulge.

In denying the request for additional questioning, the court stated:

I think I have asked all the factual questions that were presented to me. The other questions simply deal with instructions on the law, and that isn't necessary to ask in voir dire. I will instruct the jury on the law of the case and the credibility of witnesses and those things.

We have searched the jury instructions given in this case and we can find nothing that tells the jury how it should weigh the testimony of a police officer. The only charge relating to credibility was a general charge:

[Y]ou as jurors are the sole judges of the credibility of the witnesses and the weight that their testimony deserves. You may be guided by the appearance and the conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given.

You should carefully scrutinize all the testimony given, the circumstances un-

der which each witness has testified, and ever[y] matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider the witness' ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of those matters.

Consider also any relation each witness may bear to either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

■ This general charge does not cover the issue presented by the proposed question to the venire. Without such a question and without a charge on the issue, a juror could believe that the testimony of a police officer was entitled to some special weight or credence. While the conduct of a *voir dire* examination is a matter within the broad discretion of the trial judge, *Ham v. South Carolina,* 409 U.S. 524, 528, 93 S.Ct. 848, 851, 35 L.Ed.2d 46 (1973); *Aldridge v. United States,* 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), the exercise of discretion is limited by "the essential demands of fairness." *Id.* at 310, 51 S.Ct. at 471. A *voir dire* that has the effect of impairing a defendant's ability to exercise intelligently his challenges, whether for cause or peremptory, is a ground for reversal, irrespective of prejudice. *Swain v. Alabama,* 380 U.S. at 219, 85 S.Ct. at 835.

■ With the information available from the pretrial motions, particularly the testimony presented during the suppression hearing, the trial judge knew that this case was going to be decided on the basis of whether the jury believed Valentine, testifying for the government, or the defendants, testifying for themselves. Under the totality of these circumstances, failure to ask a question on *voir dire* may often be harmless, but here the *voir dire* was perfunctory, the question was vital to a fair exercise of peremptory challenges, the re-

quest was made and denied, and the point was not covered in the closing jury charge. It was an abuse of discretion not to ask the proposed question.

This is not a new requirement. In *Brown v. United States,* 338 F.2d 543 (D.C. Cir.1964), then Circuit Judge and later Chief Justice Warren Burger was faced with the failure of the trial judge to ask the identical question and the court concluded that

> when important testimony is anticipated from certain categories of witnesses, whose official or semi-official status is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination is not only appropriate but should be given if requested. Failure to make appropriate inquiry, when requested, does not necessarily require reversal; the issue turns on the degree of impact which the testimony in question would be likely to have had on the jury and what part such testimony played in the case as a whole.

*Id.* at 545. The *Brown* court found that the trial court's failure to inquire was error because the testimony of two military police officers was material to the government's case and

> [r]esponses to the requested query might have supplied defense counsel, or indeed the prosecutor, with relevant and useful information for exercising peremptory challenges or challenges for cause. We hold that under the *Sellers* case [*Sellers v. United States,* 271 F.2d 475 (D.C.Cir. 1955)], failure to inquire of the jury panel as requested regarding possible predilections concerning police testimony was reversible error in this case. We emphasize that independent of the scope of the requested query, the phrasing of the court's inquiry should include whether any juror would tend to give either more *or less* credence because of the occupation or category of the prospective witness.

*Id.* at 545 (emphasis in original).

In *United States v. Baldwin,* 607 F.2d 1295 (9th Cir.1979), the court found that

discretion is not properly exercised if the questions to the jury venire are not reasonably sufficient to test the jury for bias or partiality. The question refused in *Baldwin* is the same as that requested by appellants Evans and McIntyre. *Baldwin* discussed the matters that should be considered when this question is proposed.

All circuits appear to be in agreement that the refusal to ask the question of whether the prospective jurors would be unduly influenced by the testimony of a law enforcement officer does not always constitute reversible error; that question hinges upon such factors as the importance of the government agent's testimony to the case as a whole; the extent to which the question concerning the venireperson's attitude toward government agents is covered in other questions on voir dire and on the charge to the jury; the extent to which the credibility of the government agent-witness is put into issue; and the extent to which the testimony of the government agent is corroborated by non-agent witnesses. *cf. Brown v. United States,* [338 F.2d 543 (D.C.Cir.1964)]; *United States v. McGregor,* 529 F.2d 928, 931 (9th Cir. 1976); *United States v. Golden,* 532 F.2d 1244, 1247 (9th Cir.), *cert. denied,* 429 U.S. 842, 97 S.Ct. 118, 50 L.Ed.2d 111 (1976); *Ross v. United States,* 374 F.2d 97, 105 (8th Cir.), *cert. denied,* 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177 (1967); *Gorin v. United States,* 313 F.2d 641, 647 (1st Cir.), *cert. denied,* 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963). 607 F.2d at 1298 (parallel citations omitted).

The factors set forth in *Baldwin* all fit our facts. The government's case was completely dependent upon the testimony of Agent Valentine. He was the only witness for the government on the issue of what happened in the automobile on February 7, 1989. The credibility of Valentine was put into issue by the testimony of both McIntyre and Evans. The testimony of Valentine was not corroborated by a non-agent witness. A DEA chemist testified as to the weight and purity of the crack, but he knew nothing about the drug transaction itself. The venire's attitude toward government agents was not covered in any other question on *voir dire* nor was it covered in the charge to the jury.

There is no merit to the government's contention that the appellants did not properly present the issue to the trial judge and did not properly preserve it, after the judge had refused to make the inquiry of the venire. The government argues that after the defendants had requested and the court had refused the additional questions, the defendant's attorney responded "Thank you, Your Honor." This courteous response is often made by attorneys and is no indication that the attorney has agreed with the court, and such an expression often follows a ruling that destroys an attorney's case. In the present case the attorneys made their motion, the court ruled, and there was no reason to argue the matter any further.

The government argues that this case is controlled by *King v. Jones,* 824 F.2d 324 (4th Cir.1987), but we disagree. King's attorney submitted four pages of argumentative questions which she intended to use in conducting *voir dire* herself. There were 90 proposed questions and the attorney did not advise the trial judge as to which of these were necessary to an informed exercise of jury challenges. In *King* the attorney also admitted that she was not familiar with the federal rule that *voir dire* was handled by the district judge. The questions were not phrased in such a way as to be asked by the court, because they had been prepared for use by the attorney.

In the present case all attorneys knew that the trial would be a swearing contest between Agent Valentine and the two defendants. The court asked only eight general questions, and in denying the motion stated that he had asked all of the factual questions presented to him. As we read the questions, they have little to do with the facts, and they do not cover the essential question of increased weight or credence of a police officer's testimony which, under the facts in this case, has been universally required.

This is not a case in which the defense attorneys submitted such a long list of questions that the trial judge could not understand what additional information was being sought. The proposed question would have taken but a moment, and even though it is unlikely that there would have been an affirmative response, the defendants were entitled to the inquiry, or to a very clear jury instruction on this important issue of the weight to be given to the testimony of a police officer. Without the question or a jury charge on the point, the proceedings were unfair to the accused.

We are aware of the investment of time and resources necessary for a retrial, but this case was tried in less than a day, and this is a small price to ensure that these appellants, and the accused in similar cases in the future, have the benefit of a *voir dire* that will provide essential information so as to allow the intelligent exercise of jury challenges, whether for cause or peremptory.

### IV

■ We find no merit to the two remaining exceptions. The first is a claim that the government improperly vouched for the credibility and truthfulness of Agent Valentine by asking him on redirect examination if he were under observation by his supervisors at the time of the drug transaction, and if the supervisors were dissatisfied with his actions. The issue of whether Agent Valentine was under surveillance by any supervisors was raised by the appellants on cross-examination. The explanation given by Valentine on redirect examination did not amount to a vouching of his credibility by the government, but was simply a further explanation of the procedures used by the DEA to observe the activities of its undercover agents.

■ Appellants also claim that the trial judge erred in refusing to give limiting instructions at the time the court admitted other crimes evidence. The court originally refused a request to caution the jury about statements that did not relate to the drug transaction of February 7, 1989, and indicated that it would wait to see what

developed and whether an instruction was necessary. At the time of this ruling, no testimony had been elicited regarding Evans' post-arrest statements. After these statements came in through Agent Valentine's testimony as to what Evans had told him, there was no objection and no further request for an instruction. There was no additional crimes evidence presented by the United States in its case-in-chief; such evidence came out on cross-examination of appellants after they denied any drug involvement. No limiting instruction was given at the time of the testimony, but such an instruction was properly given in the final charge to the jury.

We find no error in the denial of appellant Evans' motion to suppress his post-arrest statement to Agents Valentine and Grubbs, nor in the trial court's handling of cautionary instructions as to other crimes, nor in the redirect examination of Agent Valentine. However, we find error in the refusal to inquire of the jury venire as to possible predilections concerning the credence of police testimony.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR A NEW TRIAL.

WILKINSON, Circuit Judge, dissenting:

The majority would reverse this conviction because the district court failed to inquire on *voir dire* if any juror would give special credence to the testimony of a law enforcement officer.

I agree with the majority that this question should have been asked. I cannot agree, however, that the failure to pose this single question requires that we reverse the result of an entire trial where there has been no suggestion that any juror harbored any bias with respect to this case.

### I.

In my view, the holding of reversible error represents an overreaction to what occurred at trial. In *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S.

548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), the Supreme Court applied harmless error analysis to a juror's inadvertent failure to answer a *voir dire* question accurately. It emphasized that "[a] trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination." *Id.* at 555, 104 S.Ct. at 850. Accordingly, the Court held that "to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* at 556, 104 S.Ct. at 850.

Although *McDonough* was a civil case, its reasoning is equally applicable to criminal cases, and several circuits have applied its analysis in criminal cases to hold harmless jurors' nondisclosure of information on *voir dire*. *See United States v. Aguon*, 851 F.2d 1158, 1170 (9th Cir.1988); *Baca v. Sullivan*, 821 F.2d 1480, 1482–83 (10th Cir. 1987); *United States v. O'Neill*, 767 F.2d 780, 785 (11th Cir.1985); *United States v. McMahan*, 744 F.2d 647, 652 (8th Cir.1984). In addition, the fact that *McDonough* involved an incorrect answer to a question and the case at bar involves a failure to ask a *voir dire* question is immaterial to the analysis since both cases resulted in incomplete information on which to base peremptory challenges.

On the facts before us, the trial judge failed to ask a question he should have asked. However, appellants have made no attempt to show that "a correct response" from any of the jurors "would have provided a valid basis for a challenge for cause." The facts here present an even better case for application of the harmless error doctrine than did those in *McDonough.* There, if the juror had answered the *voir dire* question completely and accurately, the fact of an injury to the juror's son from an exploded tire would have been revealed, and a peremptory challenge in that prod-

ucts liability case almost surely would have been exercised to strike the juror. Here, if the trial judge had asked the proper question, all the jurors may well have indicated that they had no bias in favor of the testimony of law enforcement officers, and defendant would not even have suffered the loss of the effective use of a challenge. That defendants may well have suffered no loss whatsoever illustrates why they should be required to demonstrate some semblance of juror bias before the verdict is reversed and the case is returned for a retrial which is seldom as fresh or even as reliable as the original.

I understand the difficulty experienced by defense counsel who is required to show prejudice to a client from a trial judge's failure to ask on *voir dire* a question to which counsel may never learn the answer. In some cases, this difficulty may be resolved by presuming prejudice from the failure to ask a question. The majority suggests this is a proper case for presuming prejudice, but I disagree. Even if the district judge had asked prospective jurors the proposed question, a perfunctory denial of bias (or silence) would, as the majority acknowledges, have been the most likely response. The judge asked a similar opinion question with respect to illegal drugs and it elicited no response.

Jurors, for a variety of reasons, frequently conceal their biases during *voir dire* examinations. *See, e.g.,* V. Hans and N. Vidmar, *Judging the Jury*, 68–69 (1986). Problems with juror self-disclosure stem from many causes, including inartful questioning of jurors at *voir dire*. *See, e.g.,* Suggs and Sales, *Juror Self–Disclosure in the Voir Dire: A Social Science Analysis*, 56 Ind.L.J. 245, 258–61 (1981). To identify potential juror bias, attorneys are often urged to avoid opinion questions that press jurors, often futilely, to expose themselves as prejudiced before their peers and instead to suggest questions that cause jurors to reveal facts and experiences from which bias may be better assessed. *See* F. Bailey and H. Rothblatt, *Successful Techniques for Criminal Trials*, 177 (2d ed. 1985). In this case, for example, when the trial judge

asked the venirepersons a fact-specific question on drug abuse, one of them disclosed that he was a recovering alcohol and cocaine addict.

Here, the trial judge remarked that he had asked all the "factual questions" presented to him. His remark suggests that if counsel had proposed questions in a manner designed to elicit more factual information on law enforcement connections from the venire, the trial judge may well have asked them. The questions which the trial judge did ask during *voir dire* demonstrate that he made an effort to probe the jury for bias. While the trial judge did not ask if jurors would give special credence to the testimony of law enforcement officers, he did ask: "Is there any member of this jury panel that is employed or works with or in any law enforcement capacity?" Also, he concluded *voir dire* by asking a more general question intended to uncover any additional biases not revealed by the earlier questions: "Now considering all of the questions I have already asked you, is there any reason why any one of you could not sit on the jury and render a fair and impartial verdict based upon the evidence presented here in the courtroom and the instructions on the law as will be given you by the court?"

Whatever inclination any juror may have had to accord special credence to the testimony of law enforcement officers was likely cured by the trial judge's jury instruction. As noted by the majority, the judge instructed the jury:

[Y]ou as jurors are the sole judges of the credibility of the witnesses and the weight that their testimony deserves. You may be guided by the appearance and the conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given. You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and ever[y] matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider the witness' ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of those matters.

Consider also any relation each witness may bear to either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

While the majority laments that these instructions did not cover the precise question proposed for the venire, the instructions plainly admonished the jury to consider in a sober and impartial light the testimony of each witness in the case. A jury instruction can go far in ensuring that any error the trial judge may have committed on *voir dire* will not result in prejudice to the defendant. *See King v. Lynaugh*, 850 F.2d 1055, 1061 (5th Cir.1988) (judge's charge to the jury renders harmless the failure to ask *voir dire* questions); *United States v. Espinosa*, 771 F.2d 1382, 1405 (10th Cir.1985) (questions coupled with instructions to the jury adequate to protect defendant from prejudice); *United States v. Caggiano*, 667 F.2d 1176, 1178 (5th Cir. 1982) (*voir dire* questions posed by the court combined with cautionary instructions adequately protected the defendant).

## II.

" '[A] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials." *Brown v. United States*, 411 U.S. 223, 231–32, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1973) (quoting *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968)). There is every reason to believe that the jury here took its obligations seriously and no reason to believe that impermissible bias on the part of any juror influenced the outcome of this case. Our task is to ensure fairness, not to demand perfection. Because fairness was not compromised by the district

judge's failure to pose a single question on *voir dire*, I respectfully dissent.