986 F.2d 1416
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Eusebio DISHMEY, Defendant-Appellant.
 No. 92-5104.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 30, 1992
Decided: February 23, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CR-91-349-A)
 Argued: Christopher Dean Latsios, Fairfax, Virginia, for Appellant.
 Philip Eric Urofsky, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 On Brief: Richard Cullen, United States Attorney, Robert Clifford Chesnut, Julie Anne Blink, United States Attorney's Office, Alexandria, Virginia, for Appellee.
 Before NIEMEYER, Circuit Judge, and SPROUSE and CHAPMAN, Senior Circuit Judges.
 PER CURIAM:
 
 
 1
 A jury convicted Eusebio Dishmey of knowingly distributing more than fifty grams of crack cocaine in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. On appeal, Dishmey argues that the district court erred (1) by refusing a voir dire inquiry, (2) by admitting Rule 404(b)[1] evidence of Dishmey's prior involvement with drugs, (3) by allowing the jury to take a chart illustrating the drug transaction to the jury room, and (4) by denying Dishmey's motion for acquittal. We affirm.
 
 
 2
 * Viewed in the light most favorable to the government, see Jackson v. Virginia, 443 U.S. 307, 319 (1979), the evidentiary record describes a transaction like so many seen in our review of criminal narcotics cases. On August 7, 1991, Eusebio Dishmey drove two men, Hilario Sanchez-Reyes and Nestol Deleon, to an Arlington, Virginia location prearranged by Sanchez-Reyes and an undercover DEA agent, where Sanchez-Reyes had agreed to sell the agent eight ounces of crack. Dishmey first drove past the agent to a nearby school parking lot and then returned to where the agent stood. While Dishmey sat in the driver's seat, Sanchez-Reyes, sitting in the front passenger seat, explained to the agent that he had left the "stuff" up at the school. Sanchez-Reyes tried to convince the agent to conduct the transaction in the school lot instead of on the street. When the agent refused, Dishmey drove with Sanchez Reyes back to the school lot, where the two men spoke, and then returned to where the agent stood. Dishmey listened while the agent argued with Sanchez-Reyes about where they should complete the transaction. To resolve the dispute, Dishmey agreed to put the package in a nearby grassy area for the agent to retrieve. Dishmey then drove Sanchez-Reyes back to the school lot.
 
 
 3
 After talking with the agent, Deleon rejoined Dishmey and SanchezReyes and handed a package to Dishmey. Dishmey drove over to a grassy area and threw the package onto the grass; the agent retrieved and examined the package to confirm that it contained crack. The agent then paid Deleon the agreed amount. Dishmey and his two companions drove away quickly, and were arrested a few days later.
 
 
 4
 At trial, Dishmey testified that he drove Sanchez-Reyes and Deleon to Arlington, drove around the neighborhood and school parking lot, and threw a package onto the grass. He denied, however, any knowledge that the package contained drugs or that Sanchez-Reyes or Deleon sold drugs to the agent.
 
 II
 
 5
 On appeal, Dishmey first challenges the district court's refusal on voir dire to ask the venire panel whether any of them lived in a neighborhood with a significant drug problem. The government objected to the question as irrelevant because drugs are significant everywhere, and the court sustained the objection. Dishmey claims that the court's refusal to ask the requested question was an abuse of discretion because it impaired his counsel's ability to exercise peremptory and for cause challenges.
 
 
 6
 It is true, as Dishmey contends, that a voir dire must not impair the defendant's ability to exercise his challenges to the venire panel. United States v. Evans, 917 F.2d 800, 807 (4th Cir. 1990) ("A voir dire that has the effect of impairing a defendant's ability to exercise intelligently his challenges, whether for cause or peremptory, is a ground for reversal, irrespective of prejudice."). Dishmey contends that his requested question sought to expose the"unacknowledged" or "unconscious" bias that might exist if a prospective juror lived in an area with significant drug problems. He claims that the question was necessary to expose bias "because the general public harbors strong feelings about the proliferation of narcotics in their neighborhoods" and "because the facts of the case and the anticipated evidence dealt with significant quantities of crack being distributed in a residential neighborhood."
 
 
 7
 Generally, a district court has broad discretion in conducting a voir dire examination, United States v. Griley, 814 F.2d 967, 974 (4th Cir. 1987), and, of course, it need not ask every question requested, see United States v. Guglielmi, 819 F.2d 451, 456 (4th Cir. 1987) (In a pornography case, the court refused to ask questions relating to jurors' personal reactions to specific sexual activity.), cert. denied, 484 U.S. 1019 (1988). Moreover, "[t]he burden is on the defendant to show that the trial court's conduct of voir dire prejudiced him, and led to an unfair trial." Griley, 814 F.2d at 974. As we acknowledged in Evans, "failure to ask a question on voir dire may often be harmless" under the totality of the circumstances. Evans, 917 F.2d at 807.
 
 
 8
 In Evans, the court failed to ask prospective jurors whether they would give special credence to the testimony of a law enforcement official simply because of his position. In the context of that trial, where the outcome probably depended on the credibility the jury afforded to a police officer on the one hand and to the defendants on the other-we held that the voir dire proceedings did not "provide essential information so as to allow the intelligent exercise of jury challenges." Id. at 809. The proposed voir dire question in Evans pointed directly to an area of possible jury prejudice.
 
 
 9
 In contrast, Dishmey's proposed question-whether drugs were a problem in each prospective juror's neighborhood-was so general that we cannot characterize it as helpful to either the defense or the prosecution. Although the court refused to ask that question, it asked whether any prospective juror had been the victim of a narcoticsrelated crime or was familiar with the neighborhood where the alleged drug transaction occurred. In our view, these questions were more attuned to the circumstances of Dishmey's prosecution, and we think they provided sufficient information for the parties to exercise their challenges. See Mu'min v. Virginia, 111 S. Ct. 1899, 1908 (1991) (stating that the trial court's voir dire questions must "cover" the subject of bias, but the court need not adhere to any specific method of questioning).[2] In sum, we find that the district court was well within its discretion in declining to ask prospective jurors whether drugs were a significant problem in their neighborhoods.
 
 III
 
 10
 Dishmey's second argument on appeal is that the district court improperly admitted evidence of his prior involvement with SanchezReyes and with illegal drugs. Federal Rule of Evidence 404(b) allows district courts discretion to admit evidence of prior bad acts to demonstrate intent, knowledge, or absence of mistake or accident, among other things.
 
 
 11
 Dishmey's defense at trial was that he did not know the package he placed in the grass, at the request of Sanchez-Reyes, contained drugs. Therefore, he did not knowingly distribute cocaine in violation of 21 U.S.C. § 841. In light of this defense, the government was entitled to introduce evidence to rebut Dishmey's claimed lack of knowledge as long as its prejudicial effect did not outweigh its probative value. Fed. R. Evid. 403, 404(b); see United States v. Tedder, 801 F.2d 1437, 1444 (4th Cir. 1986) (allowing evidence of prior drug dealings with co-defendant to show that defendant knew he was handling drug proceeds), cert. denied, 480 U.S. 938 (1987); United States v. Rhodes, 779 F.2d 1019, 1031 (4th Cir. 1985) (allowing evidence of defendant's prior cocaine convictions to refute claim that he lacked intent to commit drug offenses), cert. denied, 476 U.S. 1182 (1986).
 
 
 12
 Balancing the probative value of evidence against its risk of undue prejudice is within the district court's discretion. Fed. R. Evid. 403. Here, the district court weighed the probativeness of the government's evidence against its possible prejudicial effect.[3] It gave limiting instructions to the jury, both before the government introduced the evidence and during the jury instructions. This ruling does not reflect an abuse of the trial court's discretion. United States v. Heyward, 729 F.2d 297, 301 n.2 (4th Cir. 1984), cert. denied, 469 U.S. 1105 (1985).
 
 IV
 
 13
 Next, Dishmey contends that the district court erred by sending a government exhibit with the jury into the jury room. The exhibit was a map of the neighborhood where the drug transaction occurred, the location of the witnesses, and Dishmey's movements. Dishmey argues that the map was illustrative rather than substantive evidence and that allowing it to go to the jury room prejudiced him by improperly bolstering the government's case.
 
 
 14
 Dishmey does not object to the government's use of its map during trial. Rather, he argues that the trial court abused its discretion by allowing the jury to use the map during deliberations because it "improperly ... bolster[ed] the credibility of the government witnesses on a crucial element and bitterly disputed factual issue, i.e., defendant's knowledge, through the method chosen to show it, i.e., the numerous locations of defendant's car over a brief period of time."
 
 
 15
 The record shows that the district court admitted the map, without objection, after the government laid a foundation establishing its accuracy. The record does not reflect that Dishmey suffered prejudice from the jury's consideration of the map during its deliberations. See United States v. Griley, 814 F.2d 967, 975 (4th Cir. 1987) ("[I]tems entering the jury room must prejudice a party in order for reversible error to result.").
 
 
 16
 The locations pinpointed on the government's map were not at issue in the case. The map simply made it easier for the jury to trace Dishmey's back-and-forth movements throughout the drug transaction. The trial court, in its discretion, allowed the map to assist the jury in its deliberations. See United States v. Aragon, Nos. 91-5042, 91-5056, 91-5057, 91-5058, 1993 WL 5541, at * 3 (4th Cir. 1993) (" [T]he decision to send properly admitted exhibits to the jury room rests within the discretion of the trial court."). Thus, the court's decision to send the chart to the jury room was not error.
 
 V
 
 17
 Finally, Dishmey contends that the district court erred in denying his motion for acquittal under Federal Rule of Criminal Procedure 29. He claims, contrary to the district court's ruling, that the government produced insufficient evidence to sustain a conviction because it did not introduce any evidence of his knowledge or intent.
 
 
 18
 In considering a motion for acquittal, the standard is whether the evidence was sufficient, viewed in the light most favorable to the government, for a jury to find the defendant's guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Both the DEA agent and Dishmey testified that Dishmey drove Sanchez-Reyes and Deleon to a meeting point in Arlington, and that Dishmey drove to a nearby school parking lot several times. Further, they testified that Dishmey agreed to drop a package in a grassy area to resolve a dispute between the DEA agent and Sanchez-Reyes, and that he did in fact drop off the package. The government showed that the package contained crack cocaine, and introduced evidence suggesting Dishmey's prior knowledge of drug dealings. Balanced against this was Dishmey's testimony that he was not aware of the package's contents. We find no error in the court's decision denying Dishmey's motion and sending the case to the jury.
 
 
 19
 In view of the above, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Rule 404(b) of the Federal Rules of Evidence
 
 
 [2]
 In fact, one prospective juror came forward spontaneously to express her discomfort with sitting on a drug case. The following colloquy occurred before the judge asked any questions about bias:
 THE COURT: Ms. Cameron, Number 5. Yes, ma'am?
 MS. CAMERON: Yes, I'm an associate superintendent for the Fairfax County schools, responsible to the school board and school board attorney.
 THE COURT: Would that influence you in any [way in] this case?
 MS. CAMERON: I don't know, but I am a very strong advocate on the prevention of substance abuse.
 THE COURT: I think we all are at this point, but the question is whether you can give this man a fair trial on the basis of the law and evidence you have heard here?
 MS. CAMERON: I haven't heard any law or evidence.
 THE COURT: Do you feel ... you have any predisposition?
 MS. CAMERON: I came forward because I'm uncomfortable sitting on a drug case.
 THE COURT: I will go ahead and excuse you.
 
 
 [3]
 The disputed evidence was of an incident on December 20, 1990, when police found Dishmey in an apartment leased to Sanchez-Reyes with significant amounts of marijuana near him