**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 94-5741

JAMES SMITH, a/k/a Shorty Stupid,
a/k/a Little Rock,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 94-5742

MITCHELL VAN HORNE, a/k/a Twin,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 94-5762

RAYNALDO BRANDON, a/k/a Nardo,
a/k/a Naldo,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CR-94-141-A)

Argued: November 3, 1995

Decided: March 1, 1996

Before ERVIN, WILKINS, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Frank Salvato, Alexandria, Virginia, for Appellant Brandon; Suzanne Little, Alexandria, Virginia, for Appellant Van Horne; Joseph John McCarthy, DELANEY, MCCARTHY, COLTON & BOTZIN, Alexandria, Virginia, for Appellant Smith. Andrew Gerald McBride, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.
**ON BRIEF:** Alan Yamamoto, Alexandria, Virginia, for Appellant Van Horne. Helen F. Fahey, United States Attorney, Michael E. Rich, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants James Smith, Mitchell Van Horne and Raynaldo Brandon, together with Rodney Blanton, were charged in a seven count indictment with conspiracy to murder under 18 U.S.C.§ 1117 (Count 1), aiding and abetting murder under §§ 1111, 1112 (Count 2), possession of contraband under § 13, assimilating Va. Code § 53.1-203(4) (Counts 3 and 4),**1** and witness tampering under§ 1512(b)

_____

**1** Only Smith and Brandon, respectively, were charged with Counts 3 and 4.

2

(Counts 5 and 6).[2] The indictments arose out of the April 21, 1993, prison murder of Rory Randolph, an inmate at the medium security facility of the Lorton Correctional Complex. All three appellants were convicted by a jury and received life sentences; co-defendant Blanton was acquitted of all charges against him.

The evidence introduced at trial showed that Randolph may have owed a drug debt that Smith was attempting to collect. Randolph gave Smith cigarettes and sodas as "payments" on the debt, but finally quit making the "payments" because the debt was owed not to Smith, but to the drug supplier for whom Smith and Randolph allegedly had been distributors prior to their incarceration.

The evidence further showed that, on April 21, at about 6:45 p.m., a few days after Randolph told Smith that he was not going to make any more payments, Blanton approached Randolph in the T.V. room at the prison and asked him to step outside. Once outside, Van Horne grabbed Randolph from behind in a choke hold, and Smith and Brandon approached Randolph and started stabbing him. Randolph stumbled back into the T.V. room, bleeding, and eventually died from his wounds. The pathologist who performed the autopsy testified that the two principal stab wounds, one in the head and one in the chest, were inflicted by different instruments.

Witnesses to the incident included Leslie Perkins, who was later warned not to testify by Van Horne and Blanton on two different occasions. The government also offered a witness, Walter Harris, who relayed incriminating statements made by Smith while he and Smith were incarcerated together awaiting trial, and who also stated that both Smith and Van Horne threatened him after he met with the FBI concerning the statements.

The defense theory of the case was initially that Smith, Van Horne, and Brandon were all at an Arabic class at the time of the stabbing, as evidenced by an attendance sheet which all three had signed. At trial, however, Smith recanted the alibi and claimed self-defense. He

_____

[2] Only Smith and Van Horne, respectively, were charged with Counts 5 and 6. Count 7 was apparently a count of witness tampering brought against Blanton.

3

testified that he was attacked by Randolph, who had a knife, and that, after Randolph dropped the knife, he (Smith) picked it up and stabbed Randolph in self-defense. Smith testified that, after the stabbing, he ran away in fear, threw the knife in a dumpster, went and got Brandon, and that the two walked over to the prison academic building, where they signed the Arabic class attendance sheet, and then went to the prayer trailer after the class. The defense also put on a witness who testified that Van Horne was at the Arabic class at the time of the stabbing, and another witness who testified that Brandon was "stoned" and watching a movie the entire evening.

Appellants raise seven claims of trial error which in their view warrant dismissal or remand for a new trial. We affirm the convictions on all counts.

I.

Appellants make three challenges to the trial court's voir dire, challenges which are not only meritless, but which border on frivolous.

First, appellants argue that the trial court abused its discretion in refusing to send a lengthy defense-prepared questionnaire to prospective jurors and in refusing to ask a number of defense-requested questions at the voir dire itself. Relying on our opinion in United States v. Evans, 917 F.2d 800 (4th Cir. 1990), appellants argue that they were thereby denied the opportunity to intelligently exercise their peremptory challenges. Unlike the voir dire at issue in Evans, however, id. at 805, the voir dire conducted in this case was extensive; it included the submission of the court's own questionnaire to prospective jurors (the results of which were made available to counsel), questions aimed at uncovering racial or religious bias, and questions aimed at uncovering bias in favor of law enforcement officers -- the very question not asked in Evans which necessitated reversal in that case. Id. The questions proffered by the defense were either cumulative to those asked by the court, vague and confusing, or designed to inject bias into the venire. As such, they did not enhance the prospect for a fair and impartial jury, a prospect that was already more than adequately insured by the substantial voir dire actually conducted. Accordingly, the district court did not abuse its discretion in refusing the questionnaire or questions requested by the defense.

4

Second, appellants argue that the trial court erred in allowing them, collectively, only twenty peremptory challenges. Rule 24(b) of the Federal Rules of Criminal Procedure provides that"each side" in capital cases is entitled to twenty peremptory challenges. FED. R. CRIM. P. 24(b). Appellants argue that this rule entitled each of them to twenty challenges. That argument is simply contradicted by the last sentence of the rule, which gives the trial court discretion on whether to award additional challenges: "If there is more than one defendant, the court may allow the defendants additional peremptory challenges and permit them to be exercised separately or jointly." Id. (emphasis added); see also United States v. Meredith, 824 F.2d 1418, 1423 (4th Cir.), cert. denied, 484 U.S. 969 (1987), and cert. denied, 485 U.S. 991 (1988). Since appellants do not suggest that the district court abused its discretion or that they were denied a fair and impartial jury, we find no error in the district court's refusal to award additional peremptory challenges.

Third, appellants argue that the government violated Batson v. Kentucky, 476 U.S. 79 (1986), by using one of its peremptory challenges to strike a black woman from the venire . In order to claim a Batson violation, a defendant must make a prima facie showing of purposeful discrimination by the government. Purkett v. Elem, 115 S. Ct. 1769, 1770 (1995). Appellants made no such showing in this case, but even if they had, the government clearly offered legitimate, race-neutral reasons to strike the juror in question, see id.: she had a close friendship with, and had visited, a Lorton inmate; she had friendships with guards at Lorton; she had heard of this particular case through her Lorton associations; and she found it difficult to understand how the guards could have let the murder occur.

Once the government tendered its race-neutral explanation, the burden shifted to the appellants to demonstrate that the explanation was pretext for purposeful racial discrimination. Id . at 1770-71. Although appellants speculate that the government's explanation must be pretext because the juror's friendship with law enforcement officials demonstrated "precisely the profile the government should have been striving to place on the jury," Appellant's Br. at 44, they offered no evidence that the government's decision to strike Ms. Bracey was motivated by race. We will not ascribe such base motives to the government in the face of the much more plausible race-neutral explana-

5

tions, accepted by the district court, <u>see</u> J.A. at 264, that the government struck Ms. Bracey because of her prior knowledge of the case and because of her friendship with an inmate at Lorton.

II.

Appellants also challenge two evidentiary rulings of the district court, and raise a sufficiency of the evidence claim, none of which have any merit.

Smith claims that the district court abused its discretion when, after Blanton had put his motive at issue by claiming that he "didn't run with Smith," the court allowed the government to introduce evidence that Smith routinely supplied Blanton with heroin and that the two routinely used heroin together. Smith argues that the door to this evidence was opened by Blanton and could not therefore be used against Smith. He also argues that there was no link between the evidence and Randolph's murder which would render the evidence admissible to show motive under Fed. R. Evid. 404(b). Both of Smith's arguments are beside the point. First, the evidence did not come in as character evidence under Fed. R. Evid. 404(a), so whether Smith opened the door to the evidence is immaterial to whether it was admissible as motive evidence under Fed. R. Evid. 404(b). Second, Smith was charged with conspiracy to commit murder, not just murder, and, as the district court found, the evidence was relevant to the issue of Smith's motive to engage Blanton in the conspiracy as well as to Blanton's motive to participate. If anything, the district court's subsequent instruction that the evidence could be considered only against Blanton was unnecessarily cautious.

Brandon challenges the district court's decision to admit an incriminating statement made by Van Horne that was redacted so as not to implicate co-defendant Smith. Brandon alleges that by replacing Smith's name with a neutral pronoun so as to comply with <u>Bruton</u> v. <u>United States</u>, 391 U.S. 123 (1968), the district court created the possibility that the jury might improperly infer that the neutral pronoun referred to Brandon. The district court specifically instructed the jury that the statement could be used only against Van Horne, however, so any negative inference against Brandon was foreclosed.

6

Finally, Van Horne and Brandon challenge the sufficiency of the evidence supporting their respective convictions. Three witnesses placed both defendants at the scene or described their direct involvement in the murder, including George Ball, who testified that Van Horne held Randolph from behind and that Brandon stabbed him with a knife. J.A. at 386. Ball's testimony alone is sufficient to sustain the convictions, since, "viewing [it] in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

III.

Appellants' last argument is that the government withheld allegedly exculpatory information contained in six summary reports of witness interviews conducted by the FBI, thereby violating the rule set down in Brady v. Maryland, 373 U.S. 83, 87 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violate[s] due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." As we have repeatedly held, however, "Brady does not compel the disclosure of evidence available to the defendant from other sources, including diligent investigation by the defense." Stockton v. Murray, 41 F.3d 920, 927 (4th Cir. 1994) (citing United States v. Wilson, 901 F.2d 378, 380 (4th Cir. 1990)), cert. denied, 116 S. Ct. 37 (1995); see also United States v. Kelly, 35 F.3d 929, 937 (4th Cir. 1994); Epperly v. Booker, 997 F.2d 1, 9-10 (4th Cir.), cert. denied, 114 S. Ct. 611 (1993); cf. McCleskey v. Zant, 499 U.S. 467, 498 and n.* (1991) (distinguishing between 1) whether defendant knew about a document containing a statement by a witness, and 2) "the relevant question," namely, "whether he knew about or could have discovered the evidence the document recounted"); United States v. Agurs, 427 U.S. 97, 111 (1976) (rejecting "the suggestion that the prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel").

Appellants acknowledge that three of the reports-- those summarizing the interviews with witnesses Leslie Perkins, Tyrone Watson, and George Stokes -- were provided to defense counsel, but they argue that some exculpatory information was excised before the

7

reports were provided. Our review of the unredacted versions of these reports does not support appellants' claim that any exculpatory material was withheld, but in any event, the information was otherwise available to the defense. All three witnesses had testified before the grand jury, and that testimony was provided to the defense. The three witnesses were also listed on the government's witness list, and defense counsel could have interviewed them. Defense counsel's own lack of diligence does not give rise to a Brady violation. Stockton, 41 F.3d at 927.

Similarly, defense counsel knew of two of the three witnesses whose 302 reports were not provided; the names of Antonio Tirado and Charles Scott were both included on the government's witness list given to defense counsel prior to trial. No effort, apparently, was made to interview Scott, and appellants never apprised either the government or the court that Tirado was "unavailable" because of his refusal to speak with Brandon's attorney.

From the record before us, it does appear that appellants did not have access to the information in the 302 Report on Samuel Giles; Giles did not testify before the grand jury, nor was he listed on the government's witness list. But the Giles 302 Report does not include any exculpatory evidence, much less evidence that could be deemed "material." See United States v. Bagley, 473 U.S. 667, 682 (1985) ("The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome.").

Giles' 302 Report is highly incriminating as to Smith and Blanton, but does not identify either Van Horne or Brandon as participating in Randolph's murder. Appellants argue that this omission makes the report exculpatory as to both Van Horne and Brandon. Their argument, however, is without merit. Giles reported that "other inmates" were present in front of the dormitory where the assault occurred, but he said that he "had his head turned so that [Smith] and the other inmates would think [that he] did not see what happened." J.A. at 1010. Thus, the most that can be said of the Giles Report is that it did not incriminate Van Horne and Brandon, not that it exculpated them. Brady does not require the production of such evidence.

8

CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

AFFIRMED

9