Petition for rehearing en banc granted by order filed 4/15/96; opinion filed 3/20/96 is vacated.

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                    No. 95-5012

BERT LANCASTER,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                    No. 95-5190

DERRICK VANLIEROP,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-94-399-A)

Argued: December 7, 1995

Decided: March 20, 1996

Before MURNAGHAN, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Affirmed by published opinion. Judge Williams wrote the majority
opinion in which Judge Luttig joined and wrote a concurring opinion.
Judge Murnaghan wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Jerome Patrick Aquino, Alexandria, Virginia, for Appellant Vanlierop; Gregory Bruce English, ENGLISH & SMITH, Alexandria, Virginia, for Appellant Lancaster. David Joel Stander, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellee.

_____

**OPINION**

WILLIAMS, Circuit Judge:

Derrick Vanlierop and Bert Lancaster appeal their convictions for assault resulting in serious bodily injury, see 18 U.S.C.A. § 113(a)(6) (West. Supp. 1995), and prisoner possession of a shank, see 18 U.S.C.A. § 13(a) (West Supp. 1995) (assimilating Va. Code Ann. § 53.1-203(4) (Michie 1994)); additionally, Vanlierop appeals his conviction for simple assault on a correctional officer, see D.C. Code Ann. § 22-505(b) (Michie 1994). Appellants contend primarily that the district court's refusal to ask a proposed voir dire question regarding whether any member of the venire would lend greater credibility to the testimony of law enforcement officers based solely on their status as law enforcement officers requires reversal of their convictions under United States v. Evans, 917 F.2d 800 (4th Cir. 1990). Appellants also challenge a decision of the district court excluding certain evidence and a ruling by the district court limiting the cross-examination of a witness. Although we determine that the district court abused its discretion in refusing to ask the proposed voir dire question, we conclude that this error does not require reversal because it was cured by the other questions asked during voir dire, the district court's credibility instruction, and the introduction of evidence corroborating the testimony of the Government's chief witness. We also conclude that neither of Appellants' remaining contentions has merit. Accordingly, we affirm.

I.

Appellants' convictions stem from an incident at the Lorton Reformatory in Lorton, Virginia on May 14, 1994. According to the Gov-

2

ernment's theory of the case, Lancaster attacked another inmate, Aaron Davis, with a shank while Vanlierop, using a shank of his own, prevented correctional officers from coming to Davis's aid. Appellants, for their part, did not dispute that the incident occurred. Rather, they argued that Lancaster, having been attacked by Davis, acted in self-defense and that Vanlierop was attempting to assist Lancaster.

The Government presented its case largely through the testimony of Corporal Lloyd R. Staggs, III, who testified that he escorted a group of ten inmates, including Appellants, to the prison yard for a recreational period. The inmates were handcuffed together in pairs, with one inmate's right wrist shackled to his partner's left wrist.[1] Once all ten inmates had entered the yard, Corporal Staggs began to remove the handcuffs, beginning with Lancaster and his partner. Corporal Staggs then removed the handcuff from Vanlierop's partner. Before he could remove Vanlierop's handcuff, Corporal Staggs observed Lancaster stabbing Davis with a shank. Corporal Staggs restrained Lancaster, but released him after Vanlierop approached with a shank and ordered Corporal Staggs to release Lancaster. When Corporal Staggs did so, Lancaster resumed his assault on Davis.

Corporal Staggs further testified that he complied with Vanlierop's order to turn over his keys. Vanlierop then moved to the area where the fight between Lancaster and Davis was taking place. Corporal Staggs used this opportunity to call for assistance on his radio, prompting Vanlierop to threaten to kill Corporal Staggs if he used the radio. Shortly thereafter, other correctional officers arrived and restored order. Vanlierop, who initially refused to surrender his shank, was subdued by Lieutenant Charles Teixeira and Corporal Staggs. During the course of his testimony, Corporal Staggs was shown two shanks that were recovered from the prison yard after the incident. Corporal Staggs identified the shanks as those used in the incident; the shanks were then entered into evidence as Government exhibits.

On cross-examination, defense counsel questioned Corporal Staggs regarding several instances of misconduct reported in his personnel

_____

[1] Vanlierop and Lancaster were not in the same pair. The record is unclear as to whether Davis was in the group of ten inmates with Corporal Staggs, or was already in the prison yard.

3

file. These incidents included: a citation for "inexcusable neglect and negligence" after Corporal Staggs improperly allowed inmates access to an area where keys were stored; a citation for mishandling keys; a citation for engaging in "horseplay" with inmates; a citation for negligence in the performance of a count of inmates; a recommendation that Corporal Staggs's employment be terminated; and a citation for lack of dependability.

The Government also presented the testimony of Lieutenant Teixeira, who testified that as he entered the prison yard, he observed Vanlierop attempting to leave the area. Lieutenant Teixeira ordered Vanlierop to stop, at which point Vanlierop turned toward Lieutenant Teixeira and brandished a shank. Vanlierop initially refused to surrender the weapon, evidently fearful of inmates approaching from behind Lieutenant Teixeira. Vanlierop dropped the shank only after Lieutenant Teixeira threatened to spray him with mace. Lieutenant Teixeira then subdued Vanlierop and placed handcuffs on him with the assistance of Corporal Staggs. Other officers broke up the fight between Lancaster and Davis.

Lieutenant Teixeira also testified regarding his favorable opinion of Corporal Staggs's capabilities, stating that although Corporal Staggs "tends sometimes to take things too lightly," (J.A. at 152,) no disciplinary action against him was warranted with respect to his conduct during the May 14 incident. On cross-examination, defense counsel referred to several of the disciplinary reports in Corporal Staggs's personnel file, inquiring after recitation of each incident whether Lieutenant Teixeira was aware of the incident and whether it changed his opinion of Corporal Staggs. Lieutenant Teixeira responded that he was not aware of the incidents, but that his opinion of Corporal Staggs was based solely on his personal observations and that knowledge of the incidents did not substantially change his opinion. After several such questions and answers, the district court sustained the Government's objection and prohibited defense counsel from further rehashing the contents of Corporal Staggs's personnel file.

Appellants, through the testimony of Vanlierop, presented a quite different story than that offered by the Government. According to Vanlierop, he and Lancaster, who were from New York City, were subject to harassment from the other inmates, most of whom were

4

from Washington, D.C. Vanlierop testified that Davis, one of the Washington inmates, particularly disliked Lancaster. Vanlierop testified that Lancaster, rather than being the aggressor in the May 14 incident, was the victim of an unprovoked attack by Davis. Davis attacked Lancaster with a shank, stabbing him in the eye and neck. Vanlierop stated that the prisoner to whom he was handcuffed began pulling him toward Lancaster and Davis "because I think they was [sic] trying to jump me and [Lancaster] being that [Davis] didn't like Bert Lancaster and being that we are both from New York." (J.A. at 185.) Vanlierop seized Corporal Staggs's keys, unhandcuffed himself, and ran over to Lancaster and Davis.[2] According to Vanlierop, Lancaster wrested the shank away from Davis and began to stab Davis. Seeing Lieutenant Teixeira and the other guards approaching, Vanlierop grabbed the shank from Lancaster in order to protect himself and Lancaster from the other inmates. Vanlierop denied threatening Corporal Staggs. Lancaster did not testify, and the defense did not present any evidence other than Vanlierop's testimony.

The jury convicted Appellants of assault by striking, beating, or wounding; assault resulting in serious bodily injury; and prisoner possession of a shank. In addition, the jury convicted Vanlierop of simple assault on a correctional officer. At sentencing, the district court dismissed the convictions for assault by striking, beating, or wounding on the basis that these convictions were subsumed by the convictions for assault resulting in serious bodily injury. The district court then sentenced Lancaster and Vanlierop to 100 months imprisonment and to 115 months imprisonment, respectively. Appellants now challenge the validity of their convictions on several grounds, which we address seriatim.

II.

During voir dire, the district court refused to ask a question proposed by Appellants regarding whether the members of the venire would lend greater credibility to the testimony of a Lorton guard, a police officer, or an FBI agent based solely on such an individual's

_____

**2** If Vanlierop's testimony is to be believed, one is left to wonder why he chose to remove the handcuff from his partner's wrist, rather than from his own wrist.

5

status as a law enforcement officer. Appellants maintain that the trial amounted to a "swearing contest" between Vanlierop and Corporal Staggs on the issue -- critical to the defense theory that Lancaster acted in self-defense and Vanlierop merely assisted Lancaster -- of whether Lancaster attacked Davis or vice versa, and that knowledge of bias in favor of law enforcement officers based solely on their status as law enforcement officers was vital to the intelligent exercise of challenges to the venire. Relying on Evans, Appellants assert that the district court's refusal to ask the proposed question mandates reversal of their convictions.

We have noted previously that "`[t]he essential function of voir dire is to allow for the impaneling of a fair and impartial jury through questions which permit the intelligent exercise of challenges by counsel.'" King v. Jones, 824 F.2d 324, 326 (4th Cir. 1987) (quoting United States v. Brown, 799 F.2d 134, 135 (4th Cir. 1986)). A thorough voir dire is vital to a fair trial for two, equally important, reasons. First, "[w]ithout an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981) (plurality). Second, "lack of adequate voir dire impairs the defendant's right to exercise peremptory challenges." Id. Hence, although the district court enjoys broad discretion in conducting voir dire, see United States v. Muldoon, 931 F.2d 282, 286 (4th Cir. 1991), this discretion is limited by the need to ensure that restrictions placed on voir dire by the district court do not "hinder[ ] a defendant's opportunity to make reasonable use of his challenges," King, 824 F.2d at 326.

Appellants contend that the instant case is controlled by Evans. In Evans, we considered a narrow factual situation in which the only evidence the prosecution presented on one issue was the testimony of an agent of the Drug Enforcement Administration (DEA) and the only contrary evidence was the defendants' testimony. We held, limited to the particular circumstances of the case, that the district court abused its discretion when it refused to ask a proposed voir dire question almost identical to the question proposed by Appellants in this case: "Is there anyone who would give special credence and weight to the word of a law enforcement officer simply because of the fact that he

6

occupies that position?" Evans, 917 F.2d at 806. We reasoned that an affirmative answer to that question by any member of the venire would have required the district court to remove the individual for cause or, by way of further questions or instruction, to correct the individual's mistaken assumption that the testimony of police officers is entitled to "special credence." Id.

Because this case falls squarely within the limited confines of Evans, we are compelled to conclude that the district court abused its discretion in refusing to inquire whether any member of the venire would lend greater credibility to the testimony of a guard at Lorton solely because of his status as a correctional officer. Here, as in Evans, the trial amounted to a credibility contest between Corporal Staggs and Vanlierop with respect to the issue of whether Lancaster was the attacker or the victim in the May 14 incident. See id.; see also Rainey v. Conerly, 973 F.2d 321, 325 (4th Cir. 1992) (concluding, based on Evans, that district court erred in refusing to ask proposed voir dire question relating to the credibility of prison guards because "the dispositive issue in this case depends on the evaluation of the conflicting testimony of [Appellant] and other prisoners against that of [Appellee] and other police officers"). Accordingly, we must conclude that the district court erred in refusing to ask the voir dire question proposed by Appellants.**3**

_____

**3** We reject the Government's argument that Lancaster is not entitled to a finding of error under Evans because he did not testify at trial. Under the circumstances of this case, to hold that Evans does not apply to Lancaster because he did not testify at trial would effectively penalize him for exercising his Fifth Amendment right to remain silent. Evans is concerned with whether the defense has enough information to exercise intelligently its challenges to the venire. Important for Evans is not whether the defendant himself testified, but rather whether the trial amounted to a credibility contest between law enforcement officers testifying for the Government and non-law enforcement officers testifying for the defense. We find nothing in Evans to indicate that every defendant must testify in order to preserve his objection to the district court's refusal to ask a proposed voir dire question regarding whether members of the venire would lend greater credibility to the testimony of a law enforcement officer based solely on his position as a law enforcement officer.

7

That the district court erred in refusing to ask the proposed voir dire question does not, however, establish that reversal is required. See United States v. Nash, 910 F.2d 749, 753 (11th Cir. 1990) ("Even if the district court failed to ask particular voir dire questions that may be warranted . . ., we will find no abuse of discretion if the voir dire questioning as a whole complied with `the essential demands of fairness,' that is, if it gave reasonable assurance to the parties that any prejudice of the potential jurors would be discovered." (quoting United States v. Tegzes, 715 F.2d 505, 507 (11th Cir. 1983))). Rather, we must decide whether, under the totality of the circumstances, the error in refusing to ask the proposed voir dire question was harmless. See Evans, 917 F.2d at 807. This determination

> "hinges upon such factors as the importance of the government agent's testimony to the case as a whole; the extent to which the question concerning the venireperson's attitude toward government agents is covered in other questions on voir dire and on the charge to the jury; the extent to which the credibility of the government agent-witness is put into issue; and the extent to which the testimony of the government agent is corroborated by non-agent witnesses."

Id. at 808 (quoting United States v. Baldwin, 607 F.2d 1295, 1298 (9th Cir. 1979)).

Utilizing the factors enumerated above, we concluded in Evans that the district court's error in failing to ask the proposed voir dire question was not harmless:

> The factors . . . all fit our facts. The government's case was completely dependent upon the testimony of Agent Valentine. He was the only witness for the government on the issue of what happened in the automobile . . . . The credibility of Valentine was put into issue by the testimony of both [defendants]. The testimony of Valentine was not corroborated by a non-agent witness. . . . The venire's attitude toward government agents was not covered in any other question on voir dire nor was it covered in the charge to the jury.

8

Id. Appellants maintain that, as in Evans, each of the factors weighs against a finding of harmlessness. Specifically, Appellants contend that: (1) the testimony of Corporal Staggs was vital to the Government's case, because without it the Government could not establish that Lancaster was the aggressor in the attack; (2) the other questions asked by the district court during voir dire did not address the venire's attitude toward the credibility of law enforcement officers, nor did the jury instructions cover this issue; (3) Corporal Staggs's credibility was placed in issue when Appellants questioned him regarding the contents of his personnel file; and (4) Corporal Staggs's testimony that Lancaster was the aggressor in the attack against Davis was corroborated neither by the testimony of a non-agent witness nor by other evidence.

We recognize that some of the factors enumerated in Evans are present in the instant case. To begin, Corporal Staggs's testimony was vital to the Government's case because in determining whether Lancaster was the aggressor in the May 14 incident, the jury was required to decide whether Corporal Staggs or Vanlierop was the more credible witness. See id. at 807 (noting that"this case was going to be decided on the basis of whether the jury believed Valentine, testifying for the government, or the defendants, testifying for themselves"). And, Appellants challenged Corporal Staggs's credibility. As in Evans, Vanlierop's testimony contradicted that of Corporal Staggs, placing Staggs's credibility at issue. See id. at 808 ("The credibility of Valentine was put into issue by the testimony of[the defendants]."). Furthermore, the cross-examination of Corporal Staggs regarding the contents of his personnel file called into question his competence as a correctional officer and, possibly, his motive to lie in order to avoid disciplinary action as a result of his conduct during the May 14 incident.

Nevertheless, we reject Appellants' contention that the instant case is indistinguishable from Evans and conclude that reversal is unwarranted under the totality of the circumstances. First, in contrast to the "perfunctory" voir dire conducted by the district court in Evans, see id. at 807, here the district court carefully probed the members of the venire regarding any possible bias in favor of law enforcement officials resulting from the existence of a relative or friend in law enforcement, asking repeatedly whether such an association would

9

make it difficult for the venireperson to render an impartial verdict.**4** (See, e.g., J.A. at 40 ("Do you think that the fact that you have so many family members in law enforcement would make it difficult for you to be impartial in this case?"; "Would[employment by the Bureau of Alcohol, Tobacco, and Firearms] make it difficult for you to be impartial in this case?"); J.A. at 41 ("[W]ould you feel that you would be somewhat predisposed towards favoring the prosecution?"; "[W]ould [employment as a parole officer] make it difficult for you to be completely impartial in this case?"); J.A. at 42 ("Do you feel that those relationships would make it difficult for you to be impartial in this case? . . . I notice a little hesitation. Do you sort of think that you might be tilted in favor of law-enforcement witnesses in this case?").) We find it difficult to imagine that any potential juror could fail to recognize that bias in favor of law enforcement officials was inappropriate. Moreover, review of the transcript reveals that the spirit of the voir dire proceeding was one of openness and that the potential jurors forthrightly expressed their concerns about their ability to be impartial. Under these circumstances, the district court's final voir dire question -- "Ladies and Gentlemen, do you know of <u>any</u> reason, is there <u>anything at all</u> any of you know of that would make it difficult for you to sit as an impartial juror in this case?" (J.A. at 51 (emphasis added)) -- could not have failed to elicit an affirmative response from any member of the venire harboring a bias in favor of law enforcement officials. See <u>United States v. Lawrence</u>, 952 F.2d 1034, 1037 (8th Cir.) (holding that refusal to ask potential jurors

_____

**4** We are aware that in <u>Evans</u> we concluded that a single voir dire question regarding whether any member of the venire "is employed or works with or in any law enforcement capacity" did not reach the issue of the weight to be given the testimony of a law enforcement officer. See <u>Evans</u>, 917 F.2d at 805, 808. Although the analogous question asked by the district court in this case was substantially broader -- "Do any members of the panel . . . or your close personal friends or immediate family members work in a law-enforcement capacity or have you previously worked in a law-enforcement capacity?" (J.A. at 39) -- we do not rely on the fact that this question was asked to support our conclusion that the voir dire conducted by the district court was adequate to expose any biases held by the members of the venire. Rather, we look to the follow-up questions asked by the district court, which established in no uncertain terms that the district court was deeply concerned about bias in favor of law enforcement officials.

10

about credibility of police officers as witnesses was not error when the district court questioned veniremembers about relationships with individuals in law enforcement), cert. denied , 503 U.S. 1011 (1992); United States v. Espinosa, 771 F.2d 1382, 1405 (10th Cir.) (concluding that district court's failure to ask veniremembers whether they would credit a law enforcement officer's testimony solely because of his position as a law enforcement officer did not require reversal because the court questioned potential jurors at length regarding possible bias arising from relationships with law enforcement officials and instructed jurors to consider testimony "`without prejudice or sympathy'"), cert. denied, 474 U.S. 1023 (1985).

We note also that the district court asked the members of the venire whether they would be prejudiced against Appellants because of their status as inmates. While this question did not serve to ensure that the jury did not afford too much weight to the testimony of the Government's witnesses, it certainly kept the jury from making the equally egregious mistake of giving too little weight to Vanlierop's testimony solely because he was a prison inmate. Taken in this light, the question regarding whether prospective jurors would be prejudiced against Appellants because of their status as inmates is further evidence that the voir dire conducted by the district court was adequate to ferret out any bias and allow the impaneling of an impartial jury.

Second, the district court's instruction to the jury on credibility not only was more extensive than the credibility instruction in Evans, but also clearly placed the credibility of Vanlierop on equal footing with the testimony of the Government's witnesses:

> Now, in the case before you today, one of the most important areas you are going to have to work on is the credibility of witnesses, and I am going to give you now some instructions about how you approach making a decision about the credibility of witnesses.
>
> You, as jurors, are the sole and exclusive judges of the credibility of each of the witnesses called to testify in this case, and only you determine the importance that their testimony deserves. After making your assessment concerning the credibility of a witness, you may decide to believe all of

11

that witness' testimony, only a portion of it, or none of it at all.

In making your assessment, you should carefully evaluate all of the testimony given, the circumstances under which each witness has testified and every matter in evidence which tends to show whether a witness in your opinion is worthy of belief.

Consider each witness' intelligence, motive to falsify, state of mind and appearance and manner while on the witness stand.

Consider the witness' ability to observe the matters as to which he has testified and consider whether he impresses you as having an accurate memory of the matters about which he testified.

Consider also any relation that a witness may bear to either side of the case, the manner in which each witness might be affected by your verdict and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to disbelieve or discredit such testimony.

Two or more persons witnessing an incident or a transaction may simply see or hear it differently. Innocent misrecollection, like failure of recollection, is not an uncommon human experience. In weighing the effect of a discrepancy, however, always consider whether the discrepancy pertains to a matter of importance or to an insignificant detail and consider whether the discrepancy results from innocent error or from intentional falsehood.

After making your own judgment concerning the believability of a witness, you can then attach such importance to that testimony, if any, that you feel it deserves.

12

(J.A. at 235-37 (emphasis added).) This instruction, while similar in many respects to the instruction considered inadequate in <u>Evans</u>, unmistakably conveys to the jury that its credibility determinations were to be based solely on its observation of the witnesses.

Third, Corporal Staggs's version of events was corroborated by physical evidence introduced by the Government during trial. According to Appellants' version of events, only one shank was involved in the incident in the prison yard: Davis used a shank to attack Lancaster, who seized it and used it to defend himself; Vanlierop then seized the same shank and used it to defend himself and Lancaster against a mob of inmates. In contrast, Corporal Staggs testified that Vanlierop and Lancaster each had a shank. The Government's subsequent introduction into evidence of two shanks, identified by Corporal Staggs as those used in the attack, corroborated Staggs's testimony.[5]

Evaluating the totality of the circumstances, the extensive questioning by the district court during voir dire, its credibility instruction, and the admission into evidence of the two shanks used during the incident, persuade us that the instant case is distinguishable from <u>Evans</u>. We conclude that the district court's error in failing to ask the proposed voir dire question does not warrant reversal.

III.

Appellants next contend that the district court erred in granting the Government's motion <u>in limine</u> to exclude evidence regarding an assault on Appellant Lancaster that occurred three days after the May 14 incident. Appellants assert that this evidence was relevant to their claim of self-defense. Decisions regarding the admission or exclusion of evidence are committed to the sound discretion of the district court and will not be reversed absent an abuse of that discretion. <u>United States v. Bostian</u>, 59 F.3d 474, 480 (4th Cir.), <u>petition for cert. filed</u>, ___ U.S.L.W. ___ (U.S. Oct. 30, 1995) (No. 95-6607).

_____

[5] That the Government introduced evidence relating to Davis's injuries is of no moment, for Appellants do not contend that Davis was not injured during the incident. Rather, they claim that Lancaster injured Davis in self-defense.

13

On May 17, 1994, Appellant Lancaster was assaulted by Davis's cousin, another inmate. Appellants sought to introduce evidence of the May 17 assault at trial, arguing that the evidence was relevant to prove that Appellants acted in self-defense during the May 14 incident. According to Appellants' theory, the May 17 attack occurred because the first attempt on Lancaster's life had failed.**6** Appellants argue that the district court's exclusion of this evidence violated their Sixth Amendment right to compulsory process.

Appellants' compulsory process argument is unavailing. While Appellants are correct that they have a "fundamental constitutional right to a fair opportunity to present a defense," Crane v. Kentucky, 476 U.S. 683, 687 (1986), they have pointed to no authority for the novel proposition that the right to present a defense encompasses the right to present any evidence the defense wishes, regardless of its admissibility under the Federal Rules of Evidence. Here, the district court determined that evidence related to the May 17 attack on Lancaster was irrelevant and therefore inadmissible. See Fed. R. Evid. 402. This ruling was not an abuse of discretion because evidence regarding the May 17 attack did not tend to make the existence of any fact of consequence more or less probable. See Fed. R. Evid. 401. There is no evidence that Davis was present during, or associated with, the May 17 attack except for the fact that Lancaster's assailant was Davis's cousin. And, the facts relating to the May 17 attack do not serve to illuminate the circumstances surrounding the May 14 incident, Appellants' assertion to the contrary notwithstanding. Accordingly, we conclude that the district court did not abuse its discretion in excluding evidence of the May 17 attack.

IV.

Finally, Appellants claim that the district court improperly limited cross-examination of Lieutenant Teixeira with respect to his knowledge of the contents of Corporal Staggs's personnel file. Appellants assert that they were entitled to ask Lieutenant Teixeira about each disciplinary report concerning Corporal Staggs in order to show that

_____

**6** In our view, a different inference -- that the May 17 attack on Lancaster constituted retaliation for Lancaster's attack on Davis on May 14 -- is equally reasonable.

14

Lieutenant Teixeira's opinion regarding Corporal Staggs's competency was formed without sufficient knowledge of Corporal Staggs's disciplinary record. In response, the Government maintains that the district court, after allowing Appellants to inquire about Lieutenant Teixeira's knowledge of several instances of misconduct by Corporal Staggs, properly forestalled further inquiry as unnecessarily cumulative. See Fed. R. Evid. 403.

We conclude that the district court did not abuse its substantial discretion in determining that further cross-examination of Lieutenant Teixeira regarding his knowledge of the contents of Corporal Staggs's personnel file would be unnecessarily cumulative. See United States v. Moore, 27 F.3d 969, 974 (4th Cir.) ("A district court's evidentiary rulings are entitled to substantial deference and will not be reversed absent a clear abuse of discretion."), cert. denied, 115 S. Ct. 459 (1994). Appellants inquired three times whether knowledge of a specific incident would change Lieutenant Teixeira's opinion of Corporal Staggs's competency; each time Lieutenant Teixeira responded that such knowledge would not alter his opinion. Moreover, the jury already had been made aware of the full contents of Corporal Staggs's personnel file during the earlier cross-examination of Corporal Staggs. In light of these circumstances, we cannot say that the district court's decision to limit the cross-examination of Lieutenant Teixeira was arbitrary or irrational. See id. (noting that abuse of discretion in excluding evidence will be found only when district court acted arbitrarily or irrationally).

V.

Having concluded that the district court's error in refusing to ask the proposed voir dire question does not require reversal and that Appellants' remaining assertions of error are without merit, we affirm their convictions.

AFFIRMED

LUTTIG, Circuit Judge, concurring:

I believe that Judge Williams' opinion for the court properly interprets our decision in United States v. Evans, 917 F.2d 800 (4th Cir.

15

1990), as limited to the very narrow facts presented in that case, and correctly holds that the facts with which we are confronted are sufficiently different from those in Evans that that decision is not controlling here. Among other distinguishing factors, the court specifically instructed the jury in this case, unlike in Evans, that the "defendant's testimony is to be judged in the same way as that of any other witness," see J.A. at 238 -- that is, in the same way as the testimony of the two correctional officers who testified against Lancaster and Vanlierop. Additionally, there were other witnesses to the assault who could have been called to testify, as well as independent evidence of the crime beyond the testimony of the persons involved.

If the opportunity arose, however, I would overrule Evans -- or at the very least require that trial courts also ask each member of the venire whether he would "give special credence and weight to the word of [the criminal defendant] simply because of the fact that he [is the criminal defendant]," see id . at 806, and excuse for cause anyone who answers affirmatively, as Evans requires that we excuse those who say that they would give more weight to officers of the law than to criminal defendants. At a minimum, we should be evenhanded in our pursuit of rules assertedly designed to ensure evenhandedness.

MURNAGHAN, Circuit Judge, dissenting:

Because I believe that our decisions in United States v. Evans, 917 F.2d 800 (4th Cir. 1990), and Rainey v. Conerly , 973 F.2d 321 (4th Cir. 1992), require us to remand Appellants' cases for a new trial, I respectfully dissent. Satisfied with the majority's recitation of the pertinent facts, I will proceed directly to a discussion of my colleagues' conclusion that the district court's failure to ask Appellants' proposed voir dire question concerning law enforcement officers' credibility[1] constituted harmless error.

_____

[1] The precise question proposed by Appellants was: "Do any of you believe that a guard at Lorton [Reformatory], a police officer or a member of the F.B.I. is more worthy of belief than any other citizen of our community?"

16

I.

A.

In <u>Evans</u>, the defendants had been charged with distributing crack cocaine and with aiding and abetting such distribution. 917 F.2d at 802. Because, as in the case at bar, the principal evidence presented against the defendants consisted of the testimony of a law enforcement officer, <u>id.</u>, the defendants asked the district court to pose the following question to prospective jurors on <u>voir dire</u>: "Is there anyone who would give special credence and weight to the word of a law enforcement officer simply because of the fact that he occupies that position?" <u>Id.</u> at 806. The district court refused to ask the question. The impaneled jury subsequently found the defendants guilty. <u>Id.</u> at 802.

Upon reviewing the matter on appeal, we held that the district court abused its discretion when it refused to ask the proposed question, that the error was not harmless, and that the defendants were therefore entitled to a new trial. <u>Id.</u> at 805-09. We identified several reasons for our decision.

First, because at the heart of the case lay "a test of credibility" between the defendants and a law enforcement officer, it was crucial that the defendants and the court know if a prospective juror believed that special weight should be given to a law enforcement officer's testimony simply because of his occupation. <u>Id.</u> at 806. We stated that "[t]he right of the peremptory challenge has long been recognized as one of the most important rights secured to the accused," <u>id.</u> (citing <u>Swain v. Alabama</u>, 380 U.S. 202, 219 (1965)), and that, under <u>Swain</u>, "[a] <u>voir dire</u> that has the effect of impairing a defendant's ability to exercise intelligently his challenges, whether for cause or peremptory, is a ground for reversal, irrespective of prejudice," <u>id.</u> at 807. We concluded that the question proposed by the defendants "was vital to a fair exercise of peremptory challenges," <u>id</u>. at 807, and that an affirmative answer to the defendants' proposed question would have required the district court--if it could not persuade the person through instructions or additional questions to change his or her mind--to excuse the prospective juror for cause, <u>id.</u> at 806.

17

Second, while the district court's failure to ask the proposed question might have been cured by a jury instruction specifically dealing with the weight that should be given to the testimony of a law enforcement officer, only a general charge was given with respect to evaluating witnesses' credibility. Id. at 806-07. Because the district court's instructions did not include a "very clear . . . instruction on this important issue," we concluded that the general charge did not sufficiently address the issue raised in the proposed question. Id. at 807, 809.

Third, the question "would have taken only a moment" of the district court's time. Id. at 806.

Finally, we noted that our sister circuits had found that, under circumstances such as those presented in Evans, failure to ask prospective jurors whether a witness's official status would unduly sway their evaluation of his or her testimony could constitute reversible error. Id. at 807-08 (citing United States v. Baldwin, 607 F.2d 1295, 1298 (9th Cir. 1979); Brown v. United States, 338 F.2d 543, 545 (D.C. Cir. 1964) (opinion authored by then Circuit Judge Warren Burger)).

In light of all of those considerations, we determined that the defendants in Evans were entitled to a new trial.

B.

In Rainey, a prisoner, Rainey, had brought an action against a prison guard under 42 U.S.C. § 1983, alleging that excessive force had been used against him by the guard. 973 F.2d at 322. Prior to the commencement of the trial, Rainey submitted a list of seventeen questions that he wished the court to ask prospective jurors. Id. at 325. One of the proposed questions was: "Simply because of their status, would any member of the jury panel be predisposed to believe the word of a law enforcement officer or prison guard against that of a prisoner?" Id. at 325 n.1. The district court refused to ask that question, a jury was impaneled, the trial was conducted, and a verdict was returned in favor of the prison guard. Id. at 323.

Upon reviewing Rainey's claim on appeal that the district court's refusal to ask the proposed question was reversible error, we con-

cluded that the issue was "directly controlled by" our decision in Evans. Id. at 325. We noted the following similarities between the two cases: the text of the rejected questions was nearly identical; "the case[s] boiled down to a credibility determination between the testimony of a police officer and that of the [prisoners]"; "no specific jury instruction was given on the weight that should be accorded to the testimony of law enforcement officials, other than a general credibility instruction"; and in neither case did the prisoners "burden the trial court with an overly long list of proposed voir dire questions." Id. We therefore reached the following conclusion:

> [T]he similarities between this case and Evans are so pronounced that there appears to be no way that a principled distinction can be drawn. Accordingly, we hold that, under the law of this circuit, the district court's failure to question the jurors as requested by Rainey entitles Rainey to a new trial.

Id.; accord United States v. Amerson, 938 F.2d 116, 118 (8th Cir. 1991) (stating that "[w]hen, as here, a case turns on the credibility of law enforcement officers, the district court has a responsibility to ensure the jurors are not predisposed to believe the testimony of the officers is inherently more credible than that of other witnesses").

II.

The majority in the case at bar rightly concludes that, under Evans and Rainey, we are compelled to conclude that the district court in the case at bar abused its discretion when it refused to ask prospective jurors whether they believed that police officers and corrections officials are more "worthy of belief" than other members of the community. As in those cases, Appellants here did not burden the district court with a long list of proposed questions: in fact, while the prisoners in Evans and Rainey proposed seventeen questions, Appellants proposed only eight. The gist of the officer-credibility question proposed by Appellants is the same as that of the questions proposed in Evans and Rainey. This case, like those, boiled down to a determination of the comparative credibility of the prisoners and law enforcement personnel. And no jury instruction was given specifically

19

concerning the weight to be given to the testimony of law enforcement officials.

I believe it is equally clear, however, that the district court's error was not harmless and that Appellants are entitled to a new trial. Indeed, as Chief Judge Ervin, Judge Hamilton, and Senior District Judge Kellam found in Rainey, see 973 F.2d at 325, I do not believe that any "principled distinction can be drawn" between those cases-- in which we held that new trials were warranted--and the case before us today.

As the majority concedes, the testimony--and hence the credibility --of Corporal Staggs was absolutely central to the Government's case. As the majority further concedes, while the district court asked prospective jurors whether they, their friends, or their relatives had ever worked in a law enforcement capacity, the fact that a similar question had been asked in Evans did not persuade us there that the specific issue of how much weight would be given to a law enforcement officer's testimony had been sufficiently addressed. See Evans, 917 F.2d at 805, 808. The majority believes, however, that Appellants here were given a sufficient opportunity to conduct a meaningful voir dire. I disagree.

The majority bases its holding, in part, on the fact that the court below asked several prospective jurors follow-up questions concerning their ability to be impartial in light of their close association with law enforcement officials. As we held in Evans , however, questions concerning a potential juror's work in a law enforcement capacity "do not cover the essential question of increased weight or credence of a police officer's testimony." 917 F.2d at 805, 808. That "essential question" is no more addressed by two, or ten, or twenty questions concerning impartiality due to law enforcement affiliations than it is by a single one. The problem we recognized in Evans was one of substance, not repetition.

The majority also relies upon the fact that the court below asked the members of the jury panel whether they knew of any reason whatsoever why it would be difficult for them to be impartial. The majority fails to point out, however, that a similar question had been asked in Evans. In that case, the members of the venire were asked:

20

> Now, considering all of the questions I have already asked you, is there any reason why any one of you could not sit on the jury and render a fair and impartial verdict based upon the evidence presented here in the courtroom and the instructions on the law as will be given you by the court?

917 F.2d at 806. If anything, the final, catch-all question posed by the district court in Evans was more pointed, more probing than the catch-all question asked in the case at bar and relied upon by the majority. Yet a new trial was deemed necessary in Evans neverthe-less; we should certainly, then, reach the same conclusion here.

The majority also takes some comfort in the district court's jury instructions concerning the manner in which the jurors could weigh the credibility of witnesses. We held in Evans that a similar general charge did not specifically "tell[ ] the jury how it should weigh the testimony of a police officer." Id. at 806. Indeed, we even went so far as to state that "a very clear jury instruction on this important issue" was required under the circumstances of that case. Id. at 809 (empha-sis added). The fact that the district court in the instant case took a few more sentences to convey substantially the same information does not persuade me that a result different from that reached in Evans is appropriate here. Moreover, the majority curiously empha-sizes those portions of the instructions that indicate that "only [the jury] determine[s] the importance that[each witness's] testimony deserves" and that the jury should determine which witnesses "in [their] opinion [are] worthy of belief." Far from telling the jury that they were not automatically to assume that the testimony of a law enforcement officer is more credible than that of an inmate, those emphasized portions of the instructions unambiguously invited the jury to weigh each witness's credibility in whatever manner they saw fit--even, apparently, if that meant deciding that a corrections offi-cial's testimony is inherently more credible than that of a prisoner.

Finally, the majority notes that Corporal Staggs's testimony was corroborated by the finding of two shanks in the prison yard, rather than one. Evidence in addition to the in-court testimony was appar-ently introduced by the Government in Evans, too. In fact, in that case, evidence of a far more incriminating nature appears to have been admitted--namely, the post-arrest statements of one of the

21

defendants, in which he confessed to being present at the scene of the alleged crime, to receiving a portion of the drug proceeds, and to selling crack cocaine on other occasions. 917 F.2d at 802-805 (upholding the district court's denial of the defendants' motion to suppress those statements). We nevertheless concluded that, because the verdict primarily turned on the jury's weighing of two competing accounts of relevant events--one offered by a law enforcement officer and the other offered by prisoners--the district court's error in refusing to ask the proposed question concerning law enforcement officers' credibility was not harmless.

III.

A dissenting opinion was filed in Evans. I must confess that, at least in some respects, it appears that my two colleagues believe that the principles governing this case are to be found in that dissent, rather than in the opinion of the Evans majority and in the subsequently rendered unanimous panel opinion in Rainey. Like the majority here, the dissenting judge in Evans conceded that the district court should have asked the proposed voir dire question, but contended that the court's failure to do so was harmless because (1) the jurors likely would have claimed not to believe that law enforcement officers' testimony is generally more credible than that of others,**2** (2) the district court made an effort to probe for possible bias by asking whether any of the potential jurors worked in a law enforcement capacity and whether they knew of any reason why they could not be impartial, and (3) the district court gave general instructions concerning the manner in which the testimony of witnesses could be evaluated. Id. at 809-12 (dissenting opinion). Echoes of that dissenting opinion are unmistakably present in the opinion handed down by the majority today. Indeed, it seems to me that the majority has disregarded one of the most fundamental and well established principles under which we are to operate: that a panel of three Fourth Circuit judges may not overrule a prior published panel opinion. See, e.g., Norfolk & Western

_____

**2** The Evans dissenter suggested that, on appeal, the defendants should have been required to show that one or more members of the venire panel would have confessed to believing that police officers' testimony is more credible than that of other citizens. See Evans, 917 F.2d at 810 (dissenting opinion). The majority here does not advance that argument.

22

Ry. v. Director, OWCP, 5 F.3d 777, 779 (4th Cir. 1993) ("Even if we were so inclined, . . . a panel of this court may not overrule another panel's decision.").

Under the law of this circuit, as articulated in the majority opinion in Evans and in the unanimous opinion in Rainey, I do not believe that any other conclusion can be reached but that Appellants are entitled to receive a new trial. The majority having concluded otherwise, I must respectfully dissent.

23