UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                    No. 98-4043

SHEDDRIC L. WOODS,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CR-97-117)

Submitted: December 8, 1998

Decided: January 20, 1999

Before ERVIN, MICHAEL, and TRAXLER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Hunt L. Charach, Federal Public Defender, Brian J. Kornbrath, Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. Rebecca A. Betts, United States Attorney, John J. Frail, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Sheddric L. Woods appeals his conviction for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (1994). Woods received a 262-month term of imprisonment. Finding no error, we affirm.

The Government's evidence showed that Officer Scott Frame received a radio communication regarding an assault occurring in the 1500 block of Lewis Street. Upon arriving at 1547 Lewis Street, Officer Frame was directed to a location behind 1551 Lewis Street by the victim of the assault. The victim also provided Frame with a description of the clothing worn by each of the two suspects. When Frame approached the designated area, he observed Woods and another male, who matched the descriptions provided by the victim. After Officer Frame identified himself as a police officer, Woods and the other male fled. Frame pursued Woods on foot, and Woods was directly in front of him. Frame observed Woods toss a red and white cigar box to his right, in the area of some trash cans, and drop a clear plastic bag to the ground as he accidentally fell to the sidewalk. Woods then got up and continued running. Both Woods and the other male were apprehended and arrested.

Officer Frame returned to the location where he had observed Woods drop the plastic bag and recovered a small plastic bag containing several white rocks that later field-tested for cocaine base. In addition to recovering the plastic bag, Frame directed Officer Robert Brown to the area where he had observed Woods toss a red and white cigar box. Officer Brown recovered a red and white cigar box containing several large white rocks that later field-tested for cocaine base.

At Woods's trial, a forensic chemist, who was qualified as an expert in the field of controlled substance analysis, testified that he

2

had analyzed the substance from the clear plastic bag and determined that the substance was 4.32 grams of cocaine base. He also analyzed the substance from the red and white cigar box and determined that the box contained 21.7 grams of cocaine base. John Starcher, who was qualified without objection as an expert on the issue of the quantities of cocaine base that are consistent with personal use and the quantities of cocaine base that are consistent with intent to distribute, testified that in his opinion, possession of one gram or less would be consistent with personal use. Starcher further testified that based on his experience and knowledge, if an individual had 26 grams of cocaine base on his person, he intended to distribute it.

Lastly, Officer Brown testified to finding a cigar box containing what appeared to be cocaine base in the area to which he had been directed by Officer Frame. Brown testified that the search for the cigar box took less than a minute, that the trash can in which it was found was otherwise empty, and that he prepared an incident report detailing his observations and the directions he had received from Frame.

Woods's defense was based on two predominant themes. First, Woods contended that Officer Frame lacked the ability to observe him discard any drugs. While not denying that cocaine base was ultimately recovered at the scene, Woods denied that he was ever in possession of such contraband. Second, Woods claimed that even if he was found to possess the smaller quantity of drugs found at his feet, he did not possess the larger quantity of drugs found inside a cigar box that was recovered from a trash can on the scene. Thus, Woods alleged, the Government failed to prove intent to distribute beyond a reasonable doubt.

On appeal, Woods first claims that the district court erred in failing to find as pretextual the Government's explanation for using a peremptory challenge to excuse the only minority on Woods's jury panel. A district court's finding of whether a peremptory challenge was exercised for a racially discriminatory reason is given great deference and reviewed for "clear error." Jones v. Plaster, 57 F.3d 417, 421 (4th Cir. 1995).

Woods is an African-American male. Thirty-two panel members were available for the peremptory challenge process. During the voir

3

dire examination of the jury panel, the district court inquired as to whether or not any member of the panel had ever been convicted of a crime. Four jury panel members, including James Crews, answered in the affirmative. James Crews was the only African-American on the panel.

During subsequent questioning at the bench, Crews stated that he had been arrested for "nonsupport" in the State of Ohio in 1969. Crews further stated that he received "a year probation and a big fine." He also stated, "[t]hey tried to railroad me." The Government moved to strike Crews for cause on the ground that he might be prejudiced against the prosecution because he apparently saw himself as a victim of an unjust prosecution. The district court further inquired whether Crews's experience would have any bearing on his ability to serve as a fair and impartial juror, to which he responded in the negative. Thus, the Government withdrew its motion to strike for cause.

During the ensuing peremptory challenge process, the Government excused Crews. Woods objected on the ground that the Government had exercised its peremptory challenge based on racial discrimination. Woods specifically noted that Crews was in a similar situation as three other potential jurors who were all white and were involved in the criminal justice system, but only Crews was struck. The Government stated that the primary reason for striking Crews was its belief that Crews was biased against the Government based on his use of the term "railroaded." The district court held that the Government provided a rational reason for striking Crews. Woods alleges that the Government's justification for excusing Crews was pretextual because Crews immediately clarified his remark by explaining that he was not referring to the Government but rather to the party who brought the "nonsupport" action against him.

A peremptory strike cannot be exercised based on race. See Batson v. Kentucky, 476 U.S. 79, 88-89 (1986). To successfully make a Batson challenge, a defendant must first establish a prima facie case of racial discrimination. See United States v. Malindez, 962 F.2d 332, 333 (4th Cir. 1992). The burden then shifts to the Government to state a race-neutral reason for the peremptory strike. See Howard v. Moore, 131 F.3d 399, 407 (4th Cir. 1997). Once this requirement is met, the burden shifts back to the defendant to prove that the explanation

4

given by the Government is merely a pretext for discrimination. See id. at 407.

In the present case, the Government offered a race-neutral explanation for striking Crews based on its perception of Crews's potential bias against the Government. The Government's "explanation need not be `persuasive, or even plausible,' as long as it is neutral." Matthews v. Evatt, 105 F.3d 907, 917 (4th Cir. 1997) (citations omitted). We find that the district court did not clearly err in finding that the Government provided a race-neutral reason for striking Crews that was not a pretext for racial discrimination.

Woods next claims that the trial court erred in limiting Woods's right to cross-examine Officer Frame to establish bias by precluding inquiry into the fact that Frame fully cooperated with the Government but refused to speak with Woods. Limitations on a defendant's cross-examination of Government witnesses are reviewed on appeal for an abuse of discretion. See United States v. McMillon, 14 F.3d 948, 955-56 (4th Cir. 1994).

The Government's case against Woods was based primarily on Officer Frame's testimony. During Officer Frame's cross-examination, Woods attempted to establish that Frame was biased in favor of the Government by showing that he cooperated with the Government's preparation of the case but refused to speak with the defense.

A defendant's right to cross-examine a witness is secured by the Sixth Amendment's guarantee of the right to confront the witness against him. See Davis v. Alaska, 415 U.S. 308, 315 (1974). A defendant is afforded an opportunity to cross-examine a witness to establish credibility, including bias. See Fed. R. Evid. 608(b). However, the trial court retains wide latitude to impose reasonable limitations on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, or interrogation that is repetitive or only marginally relevant. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

In the present case, the requirements of the Confrontation Clause were clearly satisfied. Woods thoroughly examined Officer Frame

5

concerning his unwillingness to assist Woods in preparation for trial. The district court allowed Woods to repeatedly question Frame about his refusal to talk with Woods's investigator. No limitation was imposed upon cross-examination until Woods asked Frame who subpoenaed him to trial. The Government objected to the question on relevancy grounds, and the court sustained the objection.

Despite the limitation on cross-examination, we conclude that Woods had ample opportunity to explore Officer Frame's motivations and biases and test his credibility. The district court, therefore, did not abuse its discretion in limiting cross-examination. See McMillon, 14 F.3d at 955-56. Further, the district court's limitation did not violate Woods's rights under the Sixth Amendment's Confrontation Clause. See, e.g., United States v. Ambers, 85 F.3d 173, 176-77 (4th Cir. 1996).

Woods next claims that the district court erred in failing to find that the Government violated the notice requirements of Fed. R. Crim. P. 16(a)(1)(E), because the Government's expert testimony that no cocaine base user ever purchases more than one gram of cocaine base at a time and the bases of such opinion were never previously disclosed to Woods. Decisions regarding the admission of evidence are committed to the sound discretion of the district court and will not be reversed absent an abuse of discretion. See United States v. Lancaster, 78 F.3d 888, 896 (4th Cir. 1996).

Under Fed. R. Crim. P. 16(a)(1)(E), the Government was required to disclose to Woods a written summary of expert testimony that the Government intended to use during its case-in-chief. In the discovery provided to Woods relating to expert testimony, the Government indicated that it would present the testimony of Starcher. The discovery further stated that the essence of Starcher's testimony would be that the amounts and forms of cocaine base recovered from Woods and the individual accompanying him were consistent with an intent to distribute. Thus, Woods was given notice that Starcher would testify regarding the element of intent to distribute as indicated by drug quantity.

At trial, Starcher testified, in response to whether he had an opinion about the amount of cocaine base that is consistent with personal use

6

versus distribution, that personal use would be consistent with one gram or less of cocaine base. Starcher further testified that a person who possesses more than a gram is considered to be a distributor. Woods cross-examined Starcher extensively trying to indicate to the jury that a person could possess more than one gram of cocaine base for personal use.

Woods complains that the Government's disclosure that Starcher would testify about quantities of cocaine base that are consistent with "an intent to distribute" did not put Woods on notice that he would also testify about the quantity that was indicative of "personal use." Woods alleges that the district court's decision not to sanction the Government was prejudicial to Woods's defense because the use of an arbitrary one gram cut-off to distinguish personal use from possession with intent to distribute cocaine base was never disclosed to Woods prior to trial. We find that the notice was sufficient enough to allow Woods to prepare a cross-examination. As the district court noted, "the notice informed [Woods] that in this case where there is one batch that is less than five grams in content and another that is more," Starcher could possibly testify that possession of four grams of cocaine base would indicate possession with the intent to distribute. Thus, the district court did not abuse its discretion in admitting Starcher's testimony. See Lancaster, 78 F.3d at 896.

Woods also claims that the district court erred in allowing the Government to introduce hearsay testimony contained in Officer Brown's incident report. We review for an abuse of discretion. See id.

During Brown's direct examination he was allowed to testify from a police report he prepared on the day Woods was arrested. Brown had already testified from memory to essentially the same facts. Following his testimony, Officer Brown was asked similar questions relating to a report he had prepared, to which Woods objected. The district court permitted Brown to answer. The report itself was not admitted into evidence.

Woods alleges that the district court abused its discretion in allowing Brown to read from his incident report resulting in prejudicial error. See Fed. R. Evid. 803(8). Specifically, Woods alleges that the Government used Brown's hearsay testimony to impermissibly bol-

7

ster Officer Frame's purported observations. However, even before Brown was questioned about the incident report, he provided essentially the same testimony. Thus, even if the district court had excluded the testimony relating to the police report, the same evidence had already been testified to without objection. Therefore, the district court did not abuse its discretion in admitting the testimony. See Lancaster, 78 F.3d at 896.

Lastly, Woods claims that the district court erred in denying his request for a continuance of his sentencing hearing so that a medical examination could be conducted to determine whether his physical condition qualified him for a lower sentence. The district court's decision to deny a motion for a continuance of sentencing is reviewed for an abuse of discretion. See United States v. Speed, 53 F.3d 643, 644 (4th Cir. 1995).

Prior to Woods's scheduled sentencing hearing, he moved the district court for a continuance so that a physical examination could be performed to determine whether his medical condition, as described in his presentence report, would qualify him for a lower sentence. Woods argued that the existence of a life threatening medical condition might provide grounds for a downward departure. Woods stated, however, in response to questioning from the district court that the district court could fairly assume that Woods suffers from the condition as it was set forth in his presentence report. Thus, the district court denied his motion for a continuance.

Woods alleges on appeal that the district court's ruling prejudiced him because it deprived him of the only opportunity to obtain information potentially supportive of his request for a lower sentence. Woods contends that without the examination, he could not conclusively establish that he suffered from a life threatening condition or that his infirmity constituted an "extraordinary physical impairment," which would justify a sentencing departure. See U.S. Sentencing Guidelines Manual § 5H1.4 (1997). Because a district court has broad discretion in scheduling sentencing proceedings, a sentence will not be vacated because a continuance was denied absent a showing both that the denial of a continuance was arbitrary and that it substantially impaired the defendant's opportunity to secure a fair sentence. See Speed, 53 F.3d at 644. We find that the district court's denial of a

8

continuance in this case was neither arbitrary nor substantially impaired Woods's opportunity to secure a fair sentence. The record reveals that the district court was aware from the presentence report of the nature of Woods's illness. Thus, the district court did not abuse its discretion in denying the motion for a continuance. See id.

Accordingly, we affirm Woods's conviction and sentence. We deny Woods's motion to substitute counsel. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

9